890 P.2d 694

**RAINBOW CHEVROLET, INC.,**
**a Hawai'i Corporation,**
**Plaintiff–Appellant,**

v.

**ASAHI JYUKEN (USA), INC., a Hawai'i corporation; Asahi Jyuken Co., Ltd., a Japan corporation; Asahi Jyuken Hawai'i, Inc., a Hawai'i corporation; San Jose Plaza, Ltd., San Jose Plaza II, Ltd., Defendants–Appellees,**

and

**John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 4–20; and Doe Governmental Agencies 1–10, Defendants.**

No. 17247.

Intermediate Court of Appeals of Hawai'i.

March 6, 1995.

---

108

Gary Y. Shigemura, Randall Harakal and Kurt K. Leong (Shigemura, Harakal & Tsuji, of counsel), on the briefs, Honolulu, for plaintiff-appellant Rainbow Chevrolet, Inc.

Anthony Y. K. Kim, on the brief, Honolulu, for defendant-appellee Asahi Jyuken Hawaii, Inc., Asahi Jyuken (U.S.A.), Inc. and Asahi Jyuken Co., Ltd.

Paul H. Achitoff and Thomas R. Sylvester (Carlsmith Ball Wichman Murray Case Mukai & Ichiki, of counsel), on the brief, Honolulu, for defendant-appellee San Jose Plaza, Ltd. and San Jose Plaza II, Ltd.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

Plaintiff Rainbow Chevrolet, Inc. (Rainbow), a Hawai'i corporation, appeals the circuit court's June 3, 1993 Order Granting Defendants San Jose Plaza, Ltd. and San Jose Plaza II, Ltd.'s Motion (Filed 3/23/92) to Stay Litigation Pending Arbitration (June 3, 1993 Stay Order) and the circuit court's June 21, 1993 Order Granting Defendants Asahi Jyuken Hawaii Inc., Asahi Jyuken Co. Ltd. and Asahi Jyuken (U.S.A.) Inc.'s Motion to Stay Proceedings Pending Arbitration or in the Alternative for Dismissal of Claims Filed 5/7/93 (June 21, 1993 Stay Order). We affirm.

## FACTS

This case has its genesis in a March 16, 1987 lease (Lease) from defendants San Jose Plaza, Ltd., and San Jose Plaza II, Ltd. (collectively, San Jose), California limited partnerships, to Rainbow of approximately five acres of property (Property) in Honolulu (bounded by Pensacola, Kamaile, Pi'ioki, and Hakuhaku Streets) on which Rainbow conducted its automobile dealership. The term of the Lease was from August 1, 1987 through July 31, 1993. The rent for the first three years was $70,000 per month. The Lease provided in relevant part as follows:

(t) *Early Termination of Lease.* ...

(1) *Termination by Lessor.* In the event that Lessor elects to either Develop the Premises (defined below) or to Sell the Premises (defined below), then in either event, Lessor shall have the right to terminate this lease at any time after August 1, 1988 by giving Lessee one hundred eighty (180) days prior written notice of its intent to terminate this lease, provided, however, that in no event shall such termination be effective before January 31, 1989. In the event that Lessor gives such notice so that Lessee, upon the termination of such lease pursuant to such notice, shall not have occupied the Premises for a two-year period, then Lessor shall pay to Lessee an amount equal to the product obtained by multiplying (i) fifty percent (50%) times (ii) $70,000 times (iii) the number of months remaining after subtracting the number of months the Lessee actually had possession of the Premises from 24. For the purposes of this Lease, "Develop the Premises" shall mean any proposed undertaking to remove or substantially alter the existing improvements on the Premises by any entity or entities which involve [San Jose] (or an affiliate thereof) and/or the Pankow Group [1] and/or any third party; provided that such activity is undertaken by such entity with the understanding that [San Jose] (or affiliates thereof) and/or the Pankow Group shall have some ongoing involvement (as owner, general or limited partner, contractor or otherwise) with this property and/or any other project or projects of such entity (or its affiliates). To the extent that neither [San Jose] (or affiliates thereof) nor the Pankow Group have any ownership interest in such entity, then

1. The Pankow Group is defined in the lease as "the Charles Pankow family of companies (or as yet to be formed affiliates thereof)." It is apparent from the record that the Pankow Group refers to Charles Pankow Builders, Ltd., a California corporation, and its affiliates.

such "ongoing involvement" shall have a value of at least One Million Dollars ($1,000,000) to [San Jose] (or affiliates thereof) and/or the Pankow Group, as determined by Lessor in its sole discretion, in order for such involvement to qualify as "Development of the Premises" for the purposes of this lease. For the purposes of this lease, the term "Sell the Premises" shall mean any sale of the Premises which (x) is to a third party not affiliated in any way with [San Jose] (or an affiliate thereof) and/or the Pankow Group and (y) does not involve any Development of the Premises as defined in the immediately preceding sentence.

\* \* \* \* \* \*

(u) *Right of First Refusal.* If, and only if, during the term of this lease, Lessor elects to Sell the Premises and has received an offer to purchase the Premises either by itself or together with other property owned by the Lessor and/or the Pankow Group (collectively referred to as the "Sale Property") from a third party ("Offer"), then Lessor, before accepting such Offer, agrees to offer to sell the Sale Property to Lessee for the price and on the same terms and conditions as are set forth in the Offer by giving Lessee written notice thereof, and Lessee shall have thirty (30) days from receipt of such notice to accept such offer by giving Lessor written notice of such acceptance.... Notwithstanding anything in this Paragraph (u) that may be to the contrary, nothing herein shall be deemed to give Lessee any rights under this Paragraph (u) with regard to any proposed sale or other conveyance of the Premises to another entity in connection with the Development of the Premises and such sale or sales may be consummated by Lessor without regard to the provisions of this Paragraph (u) or compliance with any of the provisions thereof.

\* \* \* \* \* \*

(w) *Arbitration.* Any dispute arising under this lease or any addendum or other agreement incidental or ancillary to this Lease or any aspect of the relationship under the Lease between [San Jose] and [Rainbow] shall be submitted to arbitration pursuant to the rules of the American Arbitration Association ("AAA") then in effect.... An award so rendered shall be binding in all aspects and shall be subject to the provisions of Chapter 658, Hawaii [Hawai'i] Revised Statutes, as the same may be amended from time to time; provided, however, that no such award shall provide for an award of punitive damages.

\* \* \* \* \* \*

(Footnote added.)

On January 27, 1988, San Jose entered into an agreement to sell the Property to Defendant–Appellee Asahi Jyuken Co., Ltd., a Japan corporation (AJJ). It was agreed that prior to the closing of the sale, AJJ and Pankow would enter into a construction contract for the property, generally in accordance with the terms of a construction contract attached to the agreement. In a February 22, 1988 letter, San Jose informed Rainbow of the agreement of sale, that it had determined that the value of Pankow's ongoing involvement in the development was at least $1,000,000, that the right of first refusal paragraph in the Lease was inapplicable, and requested Rainbow to sign a "Tenant Estoppel Certificate" (Certificate). As transmitted by San Jose, the original paragraph 9 of the Certificate read, "[Rainbow] has no right of first refusal to purchase the leased premises under the lease or otherwise." However, before signing the Certificate, Rainbow amended paragraph 9 by adding "assuming that [San Jose] has fulfilled in good faith paragraph (t)(i)." [2] The Certificate is dated February 29, 1988. AJJ then assigned its buyer's interest in the agreement of sale to Asahi Jyuken Hawaii, Inc. (AJH), a subsidiary of AJJ formed for that purpose. Thereafter, the sale closed, and San Jose conveyed the Property to AJH subject to the Lease.

On February 7, 1990, AJH (as lessor) and Rainbow (as lessee) entered into a letter

2. The Opening Brief misquotes the handwritten note as follows: " 'assuming that Lessor has fulfilled in good faith paragraph (t)(1)' [of the Lease]." However, it appears that Rainbow's reference to "paragraph (t)(i)" does refer to paragraph (t)(1) of the Lease.

agreement (First Letter Agreement) in which it was agreed that (1) AJH could terminate the Lease by giving Rainbow sixty days' notice of the commencement of construction; and (2) upon the completion of construction, AJH would lease a portion of the improved premises to Rainbow under a new lease. This First Letter Agreement did not state what would happen if the Lease was terminated but construction was not commenced.

Paragraph 6 of the First Letter Agreement states as follows:

6. *Effect of This Agreement.* This Agreement constitutes and sets forth the entire understanding of the parties hereto and supersedes any and all prior negotiations, correspondence, understandings and agreements, whether oral or written, by the parties respecting the subject matter hereof.

On February 21, 1991, AJH and Rainbow entered into a second letter agreement (Second Letter Agreement) terminating the Lease on March 15, 1991, continuing the other terms of the First Letter Agreement, and agreeing that AJH and Rainbow would file with the Land Court a "short form agreement to lease." On the same date, AJH and Rainbow executed a "Termination of Lease" (Termination) and a "Memorandum of Agreement to Lease" (Memorandum). Thereafter, Rainbow vacated the Property. AJH recorded the Termination in the Land Court, but not the Memorandum. AJH; for reasons not shown in the record, failed to construct the contemplated improvements on the Property. That situation was not provided for by either the First Letter Agreement or the Second Letter Agreement.

On March 4, 1992, Rainbow filed its Complaint against AJJ and Asahi Jyuken (USA), Inc. (AJUSA). Rainbow subsequently added AJH and San Jose as defendants.

Rainbow's Complaint alleges that AJH and AJUSA violated Rainbow's right of first refusal under the Lease and endangered Rainbow's rights under the Lease and the two letter agreements by refusing to record the Memorandum. Count I seeks a delaration that Rainbow has a right to reoccupy the Property. Count II seeks an injunction ordering AJUSA to record the Memorandum of Agreement to Lease and enjoining it from any acts that result in the recording of liens, interests or encumbrances against the Property. The remaining counts seek damages for the following alleged causes of action: Count III, loss of income; Count IV, breach of the covenant of good faith and fair dealing and breach of fiduciary duty (misrepresentation that construction would commence); Count V, tortious interference with contractual relations (interfering with Rainbow's right of first refusal to purchase the property); Count VI, tortious interference with a prospective advantage; Count VII, conspiracy (conspiracy to defraud Rainbow into believing that the right of first refusal did not apply); Count VIII, unjust enrichment; Count IX, unfair and deceptive practices; Count X, restitution and constructive trust; Count XI, anticipatory breach of contract; and Count XII, punitive damages.

With respect to arbitration, Rainbow's Complaint states in relevant part as follows:

13. Paragraph (w) of the Lease provided that any dispute arising under this Lease or any addendum or other agreement incidental to or ancillary to this Lease or any other aspect of the relationship under the Lease between the Lessor and the Lessee would be submitted to arbitration pursuant to Chapter 658, Hawaii [Hawai'i] Revised Statutes.

\* \* \* \* \* \*

26. Paragraph 6 [of the February 7, 1990 Letter Agreement] provides that the agreement supersedes any and all prior negotiations, correspondence, understandings and agreements, whether oral or written, by the parties respecting the subject matter hereof.

The paragraph eliminates the need to go through arbitration.

\* \* \* \* \* \*

All of the answers filed by all of the defendants alleged that all or a portion of the claims alleged in the complaint are determinable by arbitration.

On March 23, 1993, San Jose filed a "Motion to Stay Pending Arbitration, or in the

Alternative, for Dismissal[.]" AJJ, AJUSA, and AJH (collectively, the Asahis) filed a similar motion on May 7, 1993. On June 3, 1993, the circuit court granted San Jose's motion and entered an order (June 3, 1993 Order) staying the proceedings and all discovery directed towards San Jose or relating to Rainbow's right of first refusal or to any acts or omissions predating San Jose's transfer of the Lease to AJH. On June 21, 1993, the circuit court granted the Asahis' motion and entered an order (June 21, 1993 Order) staying all proceedings pending the arbitration of Rainbow's claims against San Jose. The June 21, 1993 Order also mandated that any arbitration proceedings instituted to determine Rainbow's claims against the Asahis were to be referred to the same arbitration panel employed for the claims against San Jose if permitted by the rules governing that proceeding. Rainbow timely appealed the June 3, 1993 Order and the June 21, 1993 Order. Both orders are appealable because "orders granting stays and compelling arbitration are appealable[.]" *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 107, 705 P.2d 28, 35 (1985).

On May 10, 1994, Rainbow filed in circuit court a Motion to Stay Arbitration or Enforcement of Orders Pending Appeal. A July 1, 1994 order denied this motion, and Rainbow did not appeal it.

On July 11, 1994, Rainbow filed in this court a "Motion to Stay Arbitration or Enforcement of Orders Pending Appeal." In the light of this opinion, this motion will be denied.

## RULE FOR INTERPRETING THE ARBITRATION PARAGRAPH

"[W]hen '[t]he [arbitration paragraph] is clear and unambiguous its interpretation is a question of law which may be made by [the appellate] court.'" *Koolau Radiology, Inc. v. Queen's Medical Center*, 73 Haw. 433, 447, 834 P.2d 1294, 1301 (1992) (quoting *Beclar Corp. v. Young*, 7 Haw.App. 183, 190, 750 P.2d 934, 938 (1988) (internal ellipses omitted)). In this case, the arbitration paragraph is clear and unambiguous.

## DISCUSSION

### 1.

Rainbow contends that it was error to enter the stay because its Complaint alleges issues beyond the scope of the arbitration paragraph, the dispute involves issues beyond the scope of the Lease, and the stay was not limited to the issues arising under the Lease. More specifically, Rainbow contends that:

Plaintiff's Complaint includes allegations that Defendants breached two subsequent Letter Agreements which provided for termination of the original Lease ... (including the arbitration clause) and in fact were intended to cancel the original Lease....

The intent of the parties in including an arbitration clause in the Lease was to provide a mechanism for resolving contractual disputes arising out of the Lease, and not negligent or intentional torts arising out of the conduct of the parties to the Lease and any subsequent assignments of the Lease....

### A.

Assuming, but not deciding, that Rainbow's Complaint alleges issues beyond the scope of the arbitration paragraph, we conclude that the circuit court was statutorily required to enter the stay and was not authorized to limit the stay to the issues within the scope of the arbitration paragraph.

Hawai'i Revised Statutes (HRS) § 658-5 (1985) imposes a duty on the circuit court, as follows:

**No trial if issue referable to arbitration.** If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

■ HRS § 658-5 is clear and unambiguous. If a suit is brought upon "any issue [possibly] referable to arbitration under an agreement in writing," the circuit court must decide whether any issue is referable to arbitration and, if its answer is yes, it must stay the trial of all of the issues in the suit until the arbitration has been had in accordance with the terms of the agreement. In other words, if a suit is brought upon five issues and one issue is referable to arbitration, the circuit court must stay the trial of the five issues until the one issue is arbitrated or all of the relevant parties have waived their rights to arbitration.

■ The situation in this case proves the wisdom of imposing upon the circuit court the duty to raise and decide the arbitration question. If the matter is left to the parties, it is highly possible that nothing will happen. The Asahis want arbitration but are content with the status quo. Rainbow wants action but does not want arbitration. The circuit court's statutory duty exists whether or not any party has sought arbitration and continues until the circuit court decides that no issue is referable to arbitration or, if it decides that one or more issues is referable to arbitration, the arbitration is completed or all of the relevant parties have waived their rights to arbitration.

### B.

■ Rainbow contends that (a) it alleged the causes of action of "fraud and/or misrepresentation, conspiracy, and unfair and deceptive practices in the implementation or execution of the Lease[;]" and (b) "claims such as fraud and conspiracy are beyond the scope of a contractual agreement to arbitrate." In this appeal, however, these contentions are not relevant. Although we need not, and do not, decide the validity of these contentions, we note that, assuming contention (a) is true, contention (b) is an overstatement. What issues, if any, are beyond the scope of a contractual agreement to arbitrate depends on the wording of the contractual agreement to arbitrate. The dispositive question is whether any issue in the suit is referable to arbitration. Our affirmative answer is based on the following facts:

(1) under the lease, AJH has the right to terminate the lease if it elects to either develop or sell the Property, but if AJH elects to sell the Property, the Lease gives Rainbow the conditional right of first refusal to purchase the Property; and

(2) the Lease expressly provides that any issue arising out of "this Lease or any addendum or other agreement incidental or ancillary to this Lease or any other aspect of the relationship under the Lease ... shall be submitted to arbitration[.]"

The arbitration paragraph is clearly meant to cover all disputes arising out of the Lease itself, any subsidiary agreements, or any facet or view of the lessor-lessee relationship. San Jose was the lessor until AJH acquired its interest and became the successor lessor. Both letter agreements are between the lessor (AJH) and the lessee (Rainbow) and pertain to (1) the termination of the Lease of the Property, (2) the construction of new improvements on the Property, and (3) a new lease of a part of the new improvements on the Property. Event (1) happened but event (2) did not happen and, therefore, event (3) also did not happen. Rainbow's Complaint arises out of the facts that the Lease is terminated, the improvements have not been constructed, and the terminated Lease has not been replaced by a new lease.

Thus, the causes of action alleged by Rainbow do not arise only out of the conduct of the parties to the Lease. They arise out of the action or inaction of the parties to the Lease with respect to their agreements pertaining to the termination of the Lease, the construction of new improvements on the Property, and for a new lease of a part of the new improvements. In our view, any dispute that pertains to the birth, life, and death (commencement, duration, and termination) of the Lease is within the scope of the arbitration agreement. The connection and relationship between (1) the termination of the Lease, (2) the contemplated subsequent construction of improvements on the Property, and (3) the contemplated new lease of a part of the new improvements, causes us to conclude that all are within the scope of the arbitration paragraph.

### 2.

Rainbow contends that it was error to enter the stay because the Asahis waived their right to arbitration by (a) failing to timely assert their right to arbitration, and (b) actively participating in the circuit court case. We disagree.

■ In this case, the Complaint and the answers triggered the circuit court's duty under HRS § 658-5. Notwithstanding the circuit court's failure to perform its statutory duty, a party may waive its right to arbitration by (1) failing to assert its right, *Moorcroft v. First Ins. Co. of Hawaii, Ltd.*, 68 Haw. 501, 720 P.2d 178 (1986), or (2) taking actions that are " 'completely inconsistent with any reliance thereon.' " *Ass'n of Apartment Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 110, 705 P.2d 28, 36 (1985) (citation omitted). However, a waiver of a right to arbitration will not be lightly inferred because of Hawai'i's public policy of encouraging arbitration as a means of settling differences. *Kama'ole Two Hui v. Aziz Enterprises, Inc.*, 9 Haw.App. 566, 854 P.2d 232 (1993).

■ The Asahis did not fail to assert their right. Their answers cited the arbitration clause and clearly indicated their intent to rely on it and not to waive it. The fact that they did not initiate arbitration was not a waiver of their right to arbitration because they were not required to initiate arbitration.

■ With respect to completely inconsistent actions, the Hawai'i Supreme Court noted in *Swinerton* that, although defendant Swinerton had filed two motions for summary judgment before demanding arbitration, it could not be deemed to have waived its right to arbitration because the motions attacked plaintiff's underlying right to bring the suit.

Since discovery is a process of obtaining information, and such a process is not completely inconsistent with arbitration, we conclude that the Asahis' participation in discovery in the civil suit was not a waiver of their right to arbitration.

### 3.

■ The "entire understanding" paragraph in the First Letter Agreement expressly pertains to "the subject matter [of the First Letter Agreement,]" *i.e.*, the rights to terminate the Lease and to enter into a new lease. It has no impact on the arbitration paragraph in the Lease.

■ Rainbow contends that it was error to enter the stay because the two letter agreements do not contain or refer to an arbitration clause. We disagree. In our view, the relevant fact is that the two letter agreements do not in any way negate the arbitration paragraph in the Lease. The arbitration paragraph in the Lease applies to everything pertaining to the commencement, duration, and termination of the Lease. A major consideration to AJH for signing the two letter agreements was the termination of the Lease. Therefore, the arbitration paragraph applies to the two letter agreements.

### 4.

Rainbow contends that it was error to enter the stay because San Jose assigned the Property to AJH and AJH assigned the Property to Japan Leasing Co., as security for a loan. We disagree.

■ San Jose is a defendant in the circuit court case because it was the lessor prior to AJH. Therefore, San Jose is within the scope of the arbitration paragraph.

■ AJH's assignment of its rights as owner and lessor as security for a loan did not disturb AJH's status as owner and lessor. A conveyance for security purposes does not disturb the legal title. *Davis v. Harrison*, 240 F. 97 (9th Cir.1917).

### 5.

Rainbow contends that it was error to enter the stay because AJUSA and AJJ were not parties to the Lease. This contention is contrary to Rainbow's Complaint.

AJJ is the parent corporation and AJUSA and AJH are its subsidiaries. Rainbow sued AJJ, AJUSA, and AJH. Rainbow's Complaint alleges that San Jose sold the Property to AJUSA and that AJUSA negotiated

and is a party to the two letter agreements. Rainbow's Complaint seeks injunctive relief against AJUSA with respect to the Property and the Memorandum of Agreement to Lease.

It appears that Rainbow mistook AJUSA for AJH. If AJUSA was not involved, Rainbow should move to dismiss it from the case. If AJUSA was involved, it is within the scope of the arbitration paragraph.

Since AJJ was the buyer (via agreement of sale) of the Property subject to the Lease and is the party from whom AJH acquired (via assignment) its initial interest in the Property subject to the Lease, AJJ is within the scope of the arbitration paragraph.

## CONCLUSION

Accordingly, we affirm the circuit court's June 3, 1993 Stay Order and June 21, 1993 Stay Order.