# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00311-SCT

*SCOTT ADDISON CONSTRUCTION, INC.*

*v.*

*LAUDERDALE COUNTY SCHOOL SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2000 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER SOLOP |
| ATTORNEY FOR APPELLEE: | MARK D. HERBERT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 4/19/2001 |
| MOTION FOR REHEARING FILED: | 5/3/2001; denied 7/19/2001 |
| MANDATE ISSUED: | 7/26/2001 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. This is an appeal by Scott Addison Construction, Inc. ("Addison") from the Circuit Court of Lauderdale County. On November 24, 1999, Addison filed a Demand for Arbitration against the Lauderdale County School System ("School System"). In response, the School System filed an Application to Stay Arbitration. Addison in turn filed an Application for Order to Proceed with Arbitration. Both parties briefed the circuit court, and a hearing was conducted on February 11, 2000. On February 14, 2000, the circuit court issued a Memorandum Opinion and Judgment granting the School System's application. Aggrieved, Addison filed a timely appeal to this Court.

## FACTS AND PROCEEDINGS BELOW

¶2. Some facts in this case are disputed. The following recitation reflects the trial court's findings of fact, while noting any conflicts claimed to exist. The Lauderdale County School System advertised for bids for the construction of the new West Lauderdale Elementary School for the Lauderdale County School System. In the bid documents, the School System indicated that the contract form documents would be promulgated by the American Institute of Architects ("AIA"). Included in the bid documents was a copy of the short form of the contract, AIA Form 101. The bid documents also indicated that the contract would include by reference AIA Form A-201, known as the "General Conditions." Form AIA A-201 is a preprinted form document which is incorporated by reference in AIA 101 and is not signed by the parties. The bid documents that were published did not refer to the practice of the School System to delete any provisions for arbitration in the General Conditions.

¶3. The bids were opened on April 8, 1999. Scott Addison Construction, Inc. submitted the lowest and best bid for the construction of the elementary school. The Lauderdale County School Board of Trustees accepted the bid of Addison Construction on April 15, 1999, and Addison was in attendance at that

meeting. On April 26, 1999, the School Board approved the entering of a construction contract with Addison, and also formally adopted the form of the contract and authorized the execution of that form of the contract. The form of the contract adopted by the Board on April 26, 1999, included a form of the A-201 General Conditions which had all provisions relating to arbitration deleted. The minutes of the meeting on that date have attached an executed copy of the contract dated April 28, 1999.

¶4. On April 28, 1999, Addison and County officials met in a preconstruction conference to discuss various issues and to execute the contract. The testimony of the parties at this point diverges. According to the testimony of John Compton ("Compton") and David Little ("Little"), the deletion of the arbitration clauses was discussed with Scott Addison prior to the execution of the contract. Compton testified that it was the practice of the School District to always delete any reference to arbitration from construction contracts. He testified that he slid the portion of the contract referred to as the General Conditions over to Addison and told him that the provisions for arbitration had been deleted. Compton further testified that Addison stated that it was "No problem," or words to that effect. The testimony of Little, the Superintendent of Education, corroborated that of Compton on this issue. Compton stated that Addison did have a problem with the scheduling of the construction and that there was a discussion concerning Addison's concerns. Further, there was a discussion concerning a $20,000 amendment to the cost of construction. According to Compton, Addison did not appear to be concerned about the deletion of the arbitration clause from the General Conditions portion of the contract, and no further discussion occurred at that time regarding the deletion. The parties then executed the construction contract.

¶5. Addison, however, claims that he did not agree to the School System's attempt to delete the requirements for arbitration of disputes from the contract. Addison, who testified live and by affidavit, contends that he expected the arbitration provisions of the A-201 General Conditions to be included in the terms of the contract. Addison argues that it was not until *after* he signed the A101 contract document that Compton told him the arbitration provisions had been stricken from the A-201 "General Conditions," and that there had been no prior discussions whatsoever regarding deletion of the provisions.

¶6. Addison corresponded on numerous occasions with the School Board regarding his concerns about the scheduling of the construction. The trial court noted that Addison's concerns are well documented. Addison did not however, in any of his correspondence, object to the deletion of the arbitration provisions in the contract. Future concerns notwithstanding, Addison Construction proceeded with the construction of the elementary school.

¶7. The trial court found that there was persuasive evidence that the parties agreed to the deletion of the arbitration provisions prior to the execution of the contract, but that, even if the parties did not agree, Addison waived any objection to said deletion by his subsequent conduct.

## STANDARD OF REVIEW

¶8. Whether the construction contract contained an arbitration clause at the time it was executed is a factual issue to be resolved by the trial judge. Conflicting testimony in the record is to be resolved by the trier of fact. Further, "[i]t is enough to say that the [trial judge sitting without a jury], and not the reviewing court, judges the credibility of the witnesses as well as the weight and worth of their conflicting testimony." ***Burrell v. State***, 613 So.2d 1186, 1192 (Miss.1993). The trial judge's conclusions will not be disturbed on appeal where there is substantial supporting evidence in the record, even if this Court might have found otherwise as an original matter. ***Murphy v. Murphy***, 631 So.2d 812, 815 (Miss.1994). The reviewing court must

examine the entire record and must accept, "that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact. *Cotton v. McConnell*, 435 So.2d 683, 685 (Miss. 1983) (quoting *Culbreath v. Johnson*, 427 So.2d 705, 707-08 (Miss. 1983)). This Court review errors of law de novo. *[Cummings v. Benderman](#)*, 681 So.2d 97, 100 (Miss. 1996).

¶9. Addison argues that this appeal involves errors involving both factual and legal issues. Addison argues that the appropriate standard of review is de novo for two reasons. First, he asserts that the circuit court erred as a matter of law when it applied the common law definition of "waiver" to Addison's failure to object to the School System's deletion of arbitration provisions from the contract. Second, Addison argues that there was an "implicit" finding in the trial court's judgment that there had been a "modification" to the contract. Addison claims that the circuit court misapplied the law to the facts when it "gave effect to a modification" that was not supported by any consideration. The School System argues that the trial court's findings regarding whether the construction contract contained an arbitration provision and whether Addison's conduct waived that provision are pure determinations of fact.

¶10. The circuit court determined the sole issue to be "whether the contract entered into by the parties on April 28, 1999 contains any provisions for arbitration of disputes," and the court addressed this issue as a question of fact. This Court will address the issues of whether the parties agreed to delete the arbitration provisions and whether the evidence supports a finding of waiver as factual issues. However, the issue of whether the trial court should have applied the common law or the statutory definition of waiver is a question of law which will be reviewed de novo by this Court. Likewise, the issue of whether the change in the contract constituted a modification requiring consideration is a legal question requiring de novo review.

## ANALYSIS

### I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT ADDISON WAIVED HIS RIGHT TO AN ARBITRATION PROVISION IN THE CONTRACT.

#### A. Whether waiver of an arbitration provision must comply with Miss. Code Ann. § 11-15-103.

¶11. Addison contends that the circuit court erred as a matter of law when it concluded, based on common law principles, that he had waived the right to any arbitration provisions in the contract. Addison argues that under Miss. Code Ann. § 11-15-103 (Supp. 2000), entitled Arbitration of Controversies Arising from Construction Contracts and Related Agreements, waiver may only occur if a party resorts to litigation or fails to object to litigation if the other party initiates it. The statute provides in pertinent part:

> Two or more parties...may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract...Such [arbitration] agreement or provision shall be valid, enforceable and irrevocable without regard to the justiciable character of the controversy. **Provided, however, that in the event either party to such an agreement initiates litigation against the other with respect to such agreement, such arbitration provision shall be deemed waived** unless asserted as a defense on or before the responding party is required to answer to such litigation.

Miss. Code Ann. § 11-15-103 (Supp. 2000) (emphasis added). Addison cites no case law in support of

his claim that § 11-15-103 is the exclusive method by which a party may waive his or her right to arbitration. Addison instead refers the Court to *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So.2d 96, 102 (Miss. 1998) where the Court stated that:

> Articles of agreement to arbitrate...are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of arbitration proceedings.

*Id.* at 106. Addison argues that due to public policy favoring arbitration, this Court should hold that waiver of an arbitration provision may only occur if the parties resort to litigation to resolve a dispute that has actually arisen.

¶12. As the School System maintains, this Court has repeatedly held that a party may waive or agree to modify the terms of a construction contract. *See, e.g., Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 964 (Miss. 1999); *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582 (Miss. 1988). The School System asserts that the statute only provides one manner in which an arbitration clause may be waived.

¶13. This Court has not yet interpreted § 11-15-103. However, the plain language of the statute does not indicate that the statute provides the exclusive method by which a waiver may be effectuated. *Sentinel* and *Eastline* both involved situations where one party waived a right to insist on compliance with a provision in a contract. The provisions being waived in those cases were not arbitration provisions, however. While § 11-15-103 is open for interpretation, the statutory language, coupled with Mississippi precedent, favors rejection of Addison's contention that is the sole method whereby a party may waive his or her right to arbitration.

### B. Whether the trial court's finding of common law waiver is supported by the facts.

¶14. Addison next argues that, even if the Court determines that waiver of an arbitration provision is not governed by § 11-15-103, reversal is still appropriate as there are no facts to support the trial court's finding of common law waiver. The trial court made an express factual finding that Addison waived any objection to the deletion of the arbitration provisions by his conduct subsequent to the execution of the contract. The trial court found that Addison "continually objected to the provisions in the contract regarding the schedule for construction, yet he never objected to the deletion of the arbitration clause. Further, the trial court noted that Addison "proceeded with the construction of the elementary school under the contract as executed." These facts persuaded the trial court that Addison had waived his right to object to the deletion of arbitration provisions from the contract in accordance with Mississippi precedent.

¶15. The trial court cited numerous cases in support of this Court's long-standing principle that "a party to a contract may by words or conduct waive a right to which he would otherwise have been entitled." *Canizaro v. Mobile Communications Corp.*, 655 So.2d 25, 29 (Miss. 1995) (citing *Mariana v. Hennington*, 90 So.2d 356, 362 (1956); *Partee v. Pepple*, 197 Miss. 486, 20 So.2d 73, 78 (1944). Additionally, the trial court cited *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582 (Miss. 1988), where this Court found that "parties to a construction contract may waive the stipulation that all changes in work be approved through written change orders. " *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d at 904 (citing *Eastline*, 524 So.2d at 584). In *Eastline*, the Court stated that:

> Among the acts or conduct amounting to a waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance on that promise.

524 So.2d at 584.

¶16. The existence of a waiver is a factual determination to be made by the trial court, and this Court's scope of review is limited and governed by the manifest error/substantial evidence standard. *Ewing v. Adams,* 573 So.2d 1364, 1367-68 (Miss. 1990) (citing *Planters Bank & Trust Co. v. Sklar*, 555 So.2d 1024, 1031 (Miss. 1990)).

¶17. In light of this standard of review, the trial court did not err in finding that there was substantial evidence to support a finding that Addison waived his right to object to the deletion of the arbitration provisions. Subsequent to the signing of the contract, Addison had his lawyer write a letter to the School System regarding scheduling problems. Addison also engaged in "a lot of correspondence" with the architect concerning Addison's problems and concerns. Addison never sent a letter objecting to the deletion of the arbitration provisions, however. Furthermore, Addison did acquiesce to the contract by proceeding with the construction of the school. In granting the School System's Application to Stay Arbitration, the circuit court considered the evidence and testimony and found that Addison had waived his rights under the alleged arbitration provision. After a thorough review of the record, we find that the trial court's holding was indeed substantiated by the evidence.

¶18. Addison further argues that in order for a waiver to take place, the right or advantage must not only be known, but it must also be in existence and available; in other words, the need to exercise or relinquish a right must be "ripe." Addison claims that he objected to the scheduling provisions because scheduling problems were in fact occurring. He further claims that "[w]hen scheduling and other problems reached the stage of dispute ripe for resolution, Addison seized on its right to arbitrate that dispute...." Essentially, Addison is arguing that he did not complain about the deletion of the arbitration clause because he had no need to rely on the arbitration provisions until a conflict arose. Addison cites no case law in support of his contention that the need to rely on arbitration must arise before objection to the deletion of the provisions may be raised. Mississippi law clearly holds that parties to a construction agreement, as a matter of right to contract, may in advance bind themselves to compulsory arbitration of disputes that arise between them, *Craig v. Barber*, 524 So.2d 974 (Miss. 1988), and that arbitration provisions are now recognized to be valid even before a dispute arises. *IP Timberlands*, 726 So.2d at 105. If Addison ever had a right to arbitration, that right was in existence from the outset of the contract. Addison had no need to wait until the issue of arbitration became "ripe" to object to a deletion of the arbitration provisions.

¶19. Accordingly the trial court did not err in holding that Addison waived his right to object to the deletion of the arbitration provisions. This Court affirms the trial court on the issue of waiver, thereby rendering Addison's other issues moot.

## CONCLUSION

¶20. For these reasons, this Court affirms the trial court's judgment that due to Addison's waiver, the contract between Addison and the School System does not contain provisions for arbitration.

¶21. **AFFIRMED.**

**McRAE, P.J., SMITH, COBB, DIAZ AND EASLEY, JJ., CONCUR. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J., AND MILLS, J.**

**WALLER, JUSTICE, DISSENTING:**

¶22. I agree with the majority opinion insofar as it holds that Miss. Code Ann. § 11-15-103 (Supp. 2000) does not provide the *exclusive* method for waiving a construction contract's arbitration provision. However, the trial court did not consider the applicable law in determining whether Addison waived the arbitration clause, and this matter should be reversed and remanded for further proceedings on that issue.

¶23. The majority finds that Addison waived its objection to the deletion of the arbitration provisions by its conduct subsequent to the execution of the contract; *i.e.*, even though Addison made numerous objections to the provisions in the contract regarding the construction schedule, it never made an objection to the deletion of the arbitration clause.

¶24. However, the United States Court of Appeals for the Fifth Circuit has held that its precedent places a "heavy burden" on a party claiming waiver of arbitration rights, and that there is a "presumption against finding waiver." *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994). Moreover,

> "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." In general, we hesitate to find that a party has waived its contractual right to arbitration. Accordingly, we indulge a presumption against finding waiver. A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate.

*Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (citations omitted).

¶25. This presumption may be inferred from Mississippi's public policy favoring arbitration:

> This state, as a matter of public policy, has long allowed parties to arbitrate their differences and to give effect to an arbitration award. "That policy has even greater force in our present era of overcrowded judicial dockets. If there be any type of arbitration award we should be loathe to disturb, it should be that between private contracting parties respecting a matter of interest only to themselves and their respective pocketbooks." In Hutto v. Jordan, 204 Miss. 30, 36 So.2d 809, 812 (1948), this Court stated:

> Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulges in favor of the validity of arbitration proceedings.

*[IP Timberlands Operating Co. v. Denmiss Corp.](#)*, 726 So. 2d 96, 104 (Miss. 1998) (citations omitted).

¶26. A review of other states' decisions on this issue shows agreement with the Fifth Circuit's presumption against finding a waiver. *See, e.g.*, *Platt Pac., Inc. v. Andelson*, 862 P.2d 158 (Cal. 1993) ("'Waiver'

denotes voluntary relinquishment of known right."); ***Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA) Inc.***, 890 P.2d 694 (Haw. 1995) ("Waiver of right to arbitration will not be lightly inferred in view of state's public policy of encouraging arbitration as means of settling differences."); ***Mr. Mudd, Inc. v. Petra Tech, Inc.***, 892 S.W.2d 389 (Mo. Ct. App. 1995) (Under the Federal Arbitration Act, the "[p]arty seeking to establish that [the other] party waived its right to arbitrate must show that [the] waiving party had knowledge of [its] existing right to arbitrate, acted inconsistently with that existing right, and prejudiced [the] party opposing arbitration by such inconsistent acts.").

¶27. The Kansas Court of Appeals has issued an erudite discussion of whether a right to arbitrate has been waived in ***D.M. Ward Constr. Co. v. Electric Corp.***, 803 P.2d 593 (Kan. Ct. App. 1991), as follows:

> Waiver is "an intentional renunciation of a claim or right and exists only where there has been some absolute action or inaction inconsistent with that claim or right." Waiver of a contract right "'implies a voluntary and intentional renunciation of it, and some positive act or positive inaction inconsistent with the contract right is necessary to create a waiver."

> * * *

> [The Tenth Circuit has listed] six factors to be used in determining whether a party has waived the right to arbitration. These are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] [sic] had taken place"; and (6) whether the delay "affected, misled or prejudiced" the opposing party.

*Id.* at 596, 598 (citations omitted).

¶28. Applying these principles to the case at bar, if there is a strong presumption *against* waiver of the right to arbitrate, the District did not meet the burden of proof in showing that Addison waived its right. The hearing before the circuit court was essentially a "he said, she said," situation: the District averred that Addison consented to the deletion of all references to arbitration and Addison averred that it did not.

¶29. Moreover, relying on basic jurisprudence regarding waiver, the District's allegation that Addison did not complain about the deletion of the arbitration provisions does not constitute "an intentional renunciation of a claim or right." The version of the contract in which the arbitration provisions are deleted does not have any customary indicia of assent; i.e., there is no evidence on the face of the contract, such as initials, that Addison assented to the deletion of the arbitration provisions. Given Addison's assertion that it did not agree to the deletion of the provisions and the fact that the changes in the form contract were not initialed by the parties thereto, the trial court may find that, as to the changes, the contract is ambiguous on its face or that there was no meeting of the minds.

¶30. No litigation had been instigated by either of the parties when Addison claimed its right to arbitration, and the District cannot show that it has been or will be prejudiced in any way by Addison's invocation of its

right.

¶31. The circuit court should conduct a new hearing on the District's motion to stay arbitration and apply these principles.

¶32. Therefore, I respectfully dissent.

**BANKS, P.J., AND MILLS, J., JOIN THIS OPINION.**