# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00114-SCT

*THE UNIVERSITY MEDICAL CENTER*

*v.*

*JOHN HENRY MARTIN, INDIVIDUALLY AND
ON BEHALF OF WRONGFUL DEATH
BENEFICIARIES OF MARTHA MARTIN,
YASHICA GOOD, INDIVIDUALLY*


| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2006 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH L. McNAMARA |
| | STEPHANIE CASE EDGAR |
| | JOHN MICHAEL COLEMAN |
| ATTORNEYS FOR APPELLEES: | DENNIS C. SWEET, III |
| | WARREN LOUIS MARTIN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 11/13/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE DIAZ, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This is a wrongful death case involving the treatment of the decedent at defendant's medical facility following a car accident.  The day after the decedent was discharged from the defendant's facility, she passed away.  Plaintiffs brought suit against the medical providers.  At the bench trial, plaintiffs presented a medical expert to testify to the

defendant's liability. Following the trial, the trial court found in favor of the plaintiffs. Aggrieved by this judgment, defendant appeals to this Court.

**FACTS**

¶2. Martha Martin was injured in a car accident on September 29, 2001 in the early evening. She was taken to the University Medical Center ("UMC") for treatment, where she stayed until she was discharged at 4:00 a.m. on September 30, 2001. While at UMC, Ms. Martin was treated by attending Dr. Frederick Carlton and resident Dr. Lisa Anderson. Dr. Anderson performed a physical exam on Ms. Martin and ordered an EKG, chest x-ray, and CT scan for her.

¶3. Dr. Anderson testified that the physical exam and tests revealed nothing abnormal other than tenderness to the chest. Testimony from Ms. Martin's family, who stayed with her at the hospital, revealed that Ms. Martin complained of chest pain and shortness of breath throughout her time at UMC. Dr. Carlton and Dr. Anderson testified that Ms. Martin complained of chest pain and may have suffered from difficulty breathing, which is different from shortness of breath.

¶4. Ms. Martin was prescribed Motrin and Lortab for her chest pain, and when she was discharged, she was told to follow up with her private physician and to seek medical care immediately if she suffered any new symptoms. Ms. Martin's family members took her back to her home. The next day, while at home, Ms. Martin's husband, John Martin ("Martin"), discovered that she had stopped breathing. She was taken back to UMC, where she was pronounced dead. The cause of death was later determined to be pulmonary embolism (saddle type).

2

¶5.     On September 24, 2002, Martin[1] filed a complaint, which alleged, in part, medical negligence against Dr. Carlton[2] and UMC.  On October 31, 2002, UMC filed an answer, which denied the allegations of medical negligence.  On April 27, 2004, UMC filed a Motion for Summary Judgment, in part because Martin had not yet designated an expert to testify to medical negligence.  The trial court denied summary judgment, but granted UMC's motion for full disclosure of Martin's expert.  On February 16, 2005, Martin disclosed that he would present Dr. William Truly, M.D. to testify as an expert in emergency and family medicine.  Martin stated that Dr. Truly's opinions were based on Ms. Martin's medical records, well-known publications, and his medical experience.

¶6.     A bench trial took place in this matter on April 12, 2005 and April 13, 2005.  At trial, after Martin laid the foundation for Dr. Truly to testify as an expert in emergency medicine and family medicine, UMC conducted a voir dire of him.  At the conclusion of the voir dire, UMC moved to exclude Dr. Truly's testimony as an expert in emergency medicine.  After Martin's case was presented, UMC orally moved for the court to enter judgment in its favor.  UMC argued that the court should exclude Dr. Truly's testimony, which would mean that Martin had not met his burden of proof.  The trial court denied this motion and found in favor of Martin.  UMC then timely filed a Motion to Alter or Amend the Judgment, which the trial court denied.  UMC timely appealed.

---

[1] The suit was brought by John Martin, individually, and on behalf of the wrongful death beneficiaries of Martha Martin, and Yashica Good, individually.  Ms. Good is the daughter of Mr. and Ms. Martin, and was also involved in the car accident.  Because Ms. Good's claims as an individual are not relevant to the medical negligence claims against UMC, the plaintiffs-appellees will be referred to as "Martin."

[2] The allegations against Dr. Carlton were later dismissed.

**ANALYSIS**

¶7.     UMC presents one issue on appeal, which this Court finds to be without merit.

**I.      Whether the Trial Court Erred by Accepting Dr. William Truly, M.D., as an Expert in Emergency Medicine and Relying on his Expert Testimony.**

¶8.     UMC argues that the trial court erred by accepting Dr. Truly as an expert in emergency medicine and that the trial court's decision should be reversed for "relying heavily" on Dr. Truly's testimony.

¶9.     Dr. Truly's testimony shows, and his curriculum vitae confirms, that he attended Meharry Medical College in 1970 and completed an internship in 1971.  He is a member of the Jackson Medical Society of Mississippi, the Mississippi Medical Surgical Society, and the National Medical Association.  Dr. Truly testified that he graduated from medical school and began practicing in the private sector.  Because he was already practicing, Dr. Truly qualified for an equivalent residency by fulfilling continuing medical education requirements, and was permitted to sit for the medical board examination for family medicine, which he passed in 1977.  Dr. Truly testified that he has more than thirty-four years of experience in emergency and family medicine.

¶10.    On voir dire, UMC showed that Dr. Truly had not worked in an emergency room since the late 1990s.  However, Dr. Truly testified that he anticipated starting work at the Humphreys County Memorial Hospital as an emergency physician within a month of his testimony.  Also, Dr. Truly testified that, as a family physician, he treats patients who have conditions that fall under the specialty of emergency medicine.

4

¶11. After the voir dire, the trial court determined that Dr. Truly was qualified to testify as an expert in emergency medicine, over UMC's objection. The trial court stated that:

> The court has previously accepted in other trials this witness as an expert in the fields that he's been offered for today. . . . Dr. Truly is qualified based upon his education, his training and his qualifications, [and] he can testify as an expert in the field of general family medicine and emergency medicine.

¶12. Dr. Truly testified that he had experience treating patients with pulmonary embolism. He testified that, in his medical opinion, Ms. Martin's death was caused by the medical negligence of UMC physicians. Dr. Truly testified that, in his opinion, Ms. Martin had a pulmonary embolus when she was in the care of UMC and that UMC should have diagnosed it and treated it. Dr. Truly stated that he reviewed Ms. Martin's medical records, the autopsy report, and several medical articles concerning pulmonary embolism in reaching his conclusion.

¶13. Dr. Truly testified about several known risk factors for pulmonary embolism, which include major trauma, obesity, hypertension, heavy cigarette smoking, shortness of breath, age, hereditary conditions, and recent surgery. Dr. Truly stated that, despite Ms. Martin's presentation to UMC as a trauma patient, the emergency physicians should still have suspected pulmonary embolism because of her risk factors – age, obesity, trauma, hypertension, and shortness of breath. Dr. Truly maintained that UMC should have diagnosed Ms. Martin's pulmonary embolus because of her risk factors, although he agreed that "a lot of pulmonary emboli are misdiagnosed and simply missed." He testified that the standard of care for a patient like Ms. Martin involved administering an EKG (electrocardiogram), a CVC (central venous catheter), a chest x-ray, a CT scan if the patient

5

lost consciousness, ventilation perfusion scans, a spiral CT scan, a venous ultrasound over the patient's legs, and a duplex scan.[3] Dr. Truly also testified that, after diagnosing a pulmonary embolus, he would have treated Ms. Martin with a blood thinner and other treatments in order to prevent the pulmonary embolus from developing further. Dr. Truly admitted that the emergency physicians should have been aware of the possibility of internal bleeding because Ms. Martin had just been in a car accident, although he maintained that they still should have prescribed a blood thinner to prevent a pulmonary embolus from developing because the medical records revealed no sign of internal bleeding.

¶14. On appeal, UMC maintains that Dr. Truly should not have been accepted as an expert in emergency medicine because he was not qualified to testify to the standard of care in emergency medicine. UMC argues that Dr. Truly is a family physician and not an emergency physician, that Dr. Truly is not board-certified in emergency medicine, and that although Dr. Truly once practiced in emergency rooms, he has not done so for some time.

¶15. Martin argues that Dr. Truly was properly accepted as an expert in emergency medicine. Martin states that Dr. Truly is a specialist in both family medicine and emergency medicine, and has thirty-four years of experience in emergency medicine. Martin asserts that because Dr. Truly has treated patients who have had pulmonary embolism, he was qualified to testify as an expert in this case. Martin also argues that this Court does not require an expert to practice a particular specialty in order to testify about standards of care in that specialty.

---

[3] The medical records reveal that an EKG, chest x-ray, and CT scan were ordered for Ms. Martin.

6

¶16. UMC also claims that, because Dr. Truly's testimony differed from that of UMC, his opinions were scientifically invalid, and should not have been relied upon by the trial court in its findings. UMC cites case law related to the standard for allowing expert testimony in the first place, which is not helpful for determining whether or not the trial court's findings and judgment should be reversed. UMC does not present any argument or case law as to why the trial court should have found UMC's experts credible, as opposed to Dr. Truly – UMC only rehashes the testimony of the doctors and seems to imply that because UMC presented four experts who testified differently from one of Martin's experts, the trial court erred in deciding in Martin's favor.

¶17. Martin asserts that, because the trial judge sat as the trier of fact in this case, he was entitled to decide the weight and credibility of all the testimony given. Martin argues that the trial judge heard all the evidence presented and was free to reach a judgment based on the testimony that the judge found credible. Martin cites this Court's decision in ***Scott Addison Construction, Inc. v. Lauderdale County School System***, 789 So. 2d 771, 772 (Miss. 2001), to support his argument.

¶18. This Court reviews a trial court's decision to accept expert testimony for an abuse of discretion. *See, e.g.,* ***Smith v. State***, 925 So. 2d 825, 834 (Miss. 2006); ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31, 40 (Miss. 2003) (citations omitted). This Court has clearly stated that the acceptance or refusal of expert testimony falls within the sound discretion of the trial court and that this Court will only reverse a trial judge's decision if it was "arbitrary and clearly erroneous." ***Poole v. Avara***, 908 So. 2d 716, 721 (Miss. 2005) (citation omitted). This Court has also stated that "[a] trial judge's decision as to whether a

7

witness is qualified to testify as an expert is given the widest possible discretion." ***Univ. of Miss. Med. Ctr. v. Pounders***, 970 So. 2d 141, 146 (Miss. 2007) (citation omitted).

¶19.    Mississippi Rule of Evidence 702 governs expert testimony and states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702.  Rule 702 is the same as Federal Rule of Evidence 702, which was amended in response to the United States Supreme Court's decision in ***Daubert***.  ***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  In ***Daubert***, the Supreme Court stated that a trial judge must ensure that expert testimony is relevant and reliable.  ***Id.*** at 589.  Expert testimony is relevant if it relates to an issue in the case and would be helpful to the trier of fact in making findings.  ***Id.*** at 591.  Expert testimony is reliable if it is "derived by the scientific method" and is not merely "subjective belief or unsupported speculation."  ***Id.*** at 590.  The Supreme Court further stated that a trial judge must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  ***Id.*** at 592-93.

¶20.    The Supreme Court in ***Daubert*** set out a non-exhaustive list of reliability factors: whether the scientific theory can be tested, whether the theory has been published or reviewed by peers, whether there is a potential or known rate of error, and whether the theory is generally accepted in the expert's field.  ***Id.*** at 593-94.  The Supreme Court later clarified

that the ***Daubert*** factors should be applied with flexibility and with attention to the specific facts of each case. ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137, 150-51, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238, 251-52 (1999). This Court has adopted the ***Daubert*** analysis as modified by ***Kumho Tire***. ***McLemore***, 863 So. 2d at 35-40.

¶21. Mississippi Rule of Evidence 702 (like Federal Rule of Evidence 702) sets out three requirements that were added after ***Daubert*** and ***Kumho Tire***. ***Poole***, 908 So. 2d at 722. These requirements are that the testimony must be based on sufficient facts or data, the testimony must be the product of reliable principles and methods, and the witness must have reliably applied the principles and methods to the facts of the case. ***Id.*** at 722; Miss. R. Evid. 702. This Court also added that expert testimony is "presumptively admissible when relevant and reliable." ***McLemore***, 863 So. 2d at 39 (citation omitted). This Court stated that the Mississippi Rules of Evidence "grant wide latitude for experts to give opinions even when the opinions are not based on the expert's firsthand knowledge or observations." ***Id.*** at 39; *see also* ***Daubert***, 509 U.S. at 592. Furthermore, the Fifth Circuit has stated that "[m]ost of the safeguards provided for in ***Daubert*** are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." ***Gibbs v. Gibbs***, 210 F.3d 491, 500 (5th Cir. 2000).

¶22. This Court has held that there is no requirement that only a specialist in a particular field of medicine can testify to the standards of care in that field. ***West v. Sanders Clinic for Women, P.A.***, 661 So. 2d 714, 718-19 (Miss. 1995); *see also* ***Cheeks v. Bio-Medical Applications, Inc.***, 908 So. 2d 117, 120 (Miss. 2005). This Court has stated that "[m]ost courts allow a doctor to testify if they are satisfied of [sic] his familiarity with the standards

9

of the specialty, though he might not practice the specialty himself." ***West***, 661 So. 2d at 718

(quoting ***Brown v. Mladineo***, 504 So. 2d 1201, 1202 (Miss. 1987)); *see also* ***Hubbard v.***

***Wansley***, 954 So. 2d 951, 957 (Miss. 2007) (stating that an expert must have "[s]atisfactory

familiarity with the specialty of the defendant doctor" in order to testify about standards of

care in that specialty) (citing ***West***, 661 So. 2d at 719).

¶23.     By way of illustration, this Court has found expert testimony relevant and reliable

where a family physician testified about the plaintiff's orthopedic injuries and infections

because

> [t]he testimony was not based on any new or untested medical theories, but merely on [the expert's] lengthy experience as a physician. All his testimony was based on facts found in extensive medical records; therefore it was reliable. The testimony assisted the trier of fact (here, the circuit judge); therefore, it was relevant.

***Miss. Dep't of Mental Health v. Hall***, 936 So. 2d 917, 927-28 (Miss. 2006). This Court has

also found that a neurologist was qualified to testify as an expert regarding the plaintiff's

pneumonia in part because "he had treated patients similar to" the plaintiff. ***Pounders***, 970

So. 2d at 146.

¶24.     This Court reviews a trial court's findings to determine whether or not there was

manifest or clear error. *See, e.g.*, ***Univ. of Miss. Med. Ctr. v. Pounders***, 970 So. 2d 141, 145

(Miss. 2007). A trial judge's findings must be supported by substantial, credible, and

reasonable evidence. *See, e.g.*, ***Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n***, 964

So. 2d 1100, 1110 (Miss. 2007). However, a trial court's findings must be "afforded

deferential treatment." ***Pounders***, 970 So. 2d at 147. Findings of fact by a trial judge after

a bench trial are subject only to a limited scope of review if the trial judge applied the appropriate legal standard. ***Meeks v. State***, 781 So. 2d 109, 113 (Miss. 2001) (citations omitted).

¶25. This Court has stated that "[c]onflicting testimony in the record is to be resolved by the trier of fact." ***Scott Addison Constr., Inc. v. Lauderdale County Sch. Sys.***, 789 So. 2d 771, 773 (Miss. 2001). Moreover, this Court has held that "questions of weight and credibility of [expert] testimony are determined by the trier of fact." ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1355 (Miss. 1990); *see also **Pounders***, 970 So. 2d at 146 (stating that the trial judge determines the credibility of witnesses, including experts, in bench trials) (citation omitted). A trial judge has not erred simply because he or she did not acknowledge or rely on a particular expert's testimony. ***Pounders***, 970 So. 2d at 147 (citation omitted).

¶26. If there is substantial supporting evidence in the record, this Court will not reverse a trial court's findings, even if this Court disagrees with those findings. ***Scott Addison Constr., Inc.***, 789 So. 2d at 773 (citation omitted). This Court further instructed that "[t]he reviewing court must examine the entire record and must accept, 'that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact.[']" *Id.* at 773 (quoting ***Cotton v. McConnell***, 435 So. 2d 683, 685 (Miss. 1983)).

¶27. In this case, at the bench trial, Martin laid a foundation and presented Dr. Truly as an expert in emergency and family medicine, and UMC conducted a voir dire of Dr. Truly.

Based on the record before him, the trial judge decided to accept Dr. Truly as an expert in emergency medicine. The trial court did not abuse its discretion in doing so. The trial court properly made a determination that Dr. Truly's testimony would meet the requirements of both Mississippi Rule of Evidence 702 and the relevance and reliability factors in *Daubert*. *Daubert*, 509 U.S. at 593-94.

¶28. As for the *Daubert* factors, the testimony would clearly be relevant to the central issue in the case – whether or not UMC failed to meet the appropriate standards of care in emergency medicine. The testimony would be reliable because Dr. Truly was simply applying his medical experience and research in medical publications to a review of Ms. Martin's medical records. *See, e.g.*, *Hall*, 936 So. 2d at 23-24.

¶29. The testimony also met the requirements in Rule 702. The testimony would be based on sufficient facts or data in the form of Ms. Martin's medical records and medical publications. It would be the product of reliable principles and methods because Dr. Truly reviewed the medical records and publications, and would apply principles gleaned from them and his medical experience. Lastly, the trial judge in this case was in the best position to determine whether or not Dr. Truly would reliably apply the principles and methods to the facts of the case since the trial court had accepted Dr. Truly as an expert in emergency medicine before.

¶30. Since the trial court was satisfied with Dr. Truly's familiarity with the standards of care in emergency medicine, the fact that he was not practicing emergency medicine at the

12

time of the trial does not bar the trial court from accepting his testimony as an expert in emergency medicine. *See, e.g.*, ***Pounders***, 970 So. 2d at 146; ***Hall***, 936 So. 2d at 927-28.

¶31. Therefore, we find that the trial court did not abuse its discretion and properly allowed Dr. Truly to testify as an expert in emergency medicine.

¶32. Because we find that Dr. Truly was properly accepted as an expert, it follows that the trial court did not commit manifest error by considering and relying on Dr. Truly's testimony in its findings of fact and conclusions of law. This Court gives deference to the findings of the trial court. *See, e.g.*, ***Pounders***, 970 So. 2d at 147. Furthermore, this Court has recently reiterated in ***Palmer*** and ***Pounders*** that the consideration and weighing of expert testimony fall squarely within the trial court's discretion. ***Pounders***, 970 So. 2d at 146; ***Palmer***, 564 So. 2d at 1355. The trial court, sitting as trier of fact, did not err by resolving the conflicting testimony given at trial.

¶33. Accepting the evidence in support of the trial court's findings, and drawing all reasonable inferences from that evidence, we find that the trial court properly found that UMC committed medical malpractice. Regardless of what this Court might have decided had it been sitting as the factfinder, the trial court's findings must not be disturbed merely for adopting the testimony of one party's expert while disregarding that of the other party's experts. *See, e.g.*, ***Scott Addison Constr., Inc.***, 789 So. 2d at 773; ***Pounders***, 970 So. 2d at 147; ***Palmer***, 564 So. 2d at 1355.

¶34. Therefore, this Court concludes that the trial court did not err in finding that the physicians at UMC should have diagnosed Ms. Martin with a pulmonary embolus and that the judgment in Martin's favor, should not be disturbed.

## CONCLUSION

¶35. We find that the trial court did not err in accepting Dr. Truly's expert testimony, nor did it err by relying on Dr. Truly's testimony in making its findings of fact and conclusions of law. Therefore, the trial court's judgment is affirmed.

¶36. **AFFIRMED.**

**WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY. SMITH, C.J., NOT PARTICIPATING.**