126 P.3d 386

FIREMAN'S FUND INSURANCE
COMPANY, Plaintiff–Appel-
lant/Cross Appellee,

v.

AIG HAWAI'I INSURANCE COMPANY,
INC., Defendant–Appellee/Cross
Appellant.

No. 25035.

Supreme Court of Hawai'i.

Jan. 18, 2006.

Reconsideration Denied Feb. 3, 2006.

Keith K. Hiraoka (of Roeca Louie & Hiraoka), Honolulu, on the briefs, for plaintiff-appellant/cross appellee.

Randall Y.S. Chung, Honolulu, and Archie T. Ikehara, on the briefs, for defendant-appellee/cross-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

The instant appeals arise out of a declaratory judgment action initiated by plaintiff-appellant/cross-appellee Fireman's Fund Insurance Company (Fireman's Fund). Therein, Fireman's Fund, the assignee and insurer of Outrigger Hotels Hawai'i (Outrigger), sought a declaration that defendant-appellee/cross-appellant AIG Hawai'i Insurance Co., Inc. (AIG Hawai'i) had a duty to defend Outrigger in two personal injury lawsuits:

(1) *Labarbera v. Outrigger Hotels Hawai'i*; and (2) *Dannog v. Outrigger Hotels Hawai'i* [hereinafter, collectively, the underlying lawsuits]. Fireman's Fund and AIG Hawai'i both appeal from the March 15, 2002 collateral order of the Circuit Court of the Fifth Circuit, the Honorable George M. Masuoka presiding, granting in part AIG Hawai'i's motion to compel arbitration and stay the proceedings pending arbitration (motion to compel arbitration), pursuant to a Special Arbitration Agreement (Arbitration Agreement) to which both Fireman's Fund and AIG Hawai'i are parties.

On appeal, Fireman's Fund essentially contends that the trial court erred in granting AIG Hawai'i's motion to compel arbitration because the dispute over AIG Hawai'i's duty to defend and the consequences of the alleged breach of that duty are not subject to the Arbitration Agreement. AIG Hawai'i cross-appeals, claiming that, although the trial court did not err in compelling arbitration, the trial court erred in limiting the issues to be arbitrated. AIG Hawai'i specifically argues that whether it has a duty to defend or a duty to indemnify are arbitrable issues.

For the reasons discussed below, we agree with AIG Hawai'i that the trial court erred in limiting the issues to be arbitrated. We, therefore, hold that the disputes regarding the duties to defend, pay for defense costs, and provide liability coverage are arbitrable issues. Accordingly, we vacate that portion of the March 15, 2002 order limiting the arbitrable issues and remand this case to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

Both of the underlying lawsuits arose from a December 30, 1998 motor vehicle accident that occurred when an automobile owned by Cynthia Sharabi and driven by Sharabi's boyfriend, Rodney Silva, collided with another vehicle driven by Shawn Labarbera and occupied by Editha Dannog and her three children.[1] The *Labarbera* lawsuit involved one claimant, Shawn Labarbera. The *Dannog* lawsuit involved five claimants, Editha Dannog and her four minor children: (1) Dustin Brun; (2) Ashley Baptiste; (3) Candace Baptiste; and (4) Brittney Labarbera [hereinafter, collectively with Shawn Labarbera, the complainants]. The underlying lawsuits named Sharabi, Silva, and Outrigger as defendants. The complainants alleged, *inter alia*, that: (1) Silva was an Outrigger employee who was operating Sharabi's automobile while in the course and scope of his employment with Outrigger; and (2) Outrigger was liable for its own negligent acts and omissions in serving Silva alcoholic beverages while he was apparently intoxicated.[2] The underlying lawsuits were consolidated at some point in the proceedings.

AIG Hawai'i issued a personal automobile policy (AIG Hawai'i policy) to Sharabi, which covered the vehicle operated by Silva. AIG Hawai'i assigned counsel to defend Sharabi and Silva against the underlying lawsuits. Fireman's Fund issued a business automobile policy (Fireman's Fund policy) to Outrigger. Fireman's Fund assigned counsel to defend Outrigger against the underlying lawsuits, pursuant to a reservation of rights. On December 19, 2000, Outrigger's defense was tendered to AIG Hawai'i. AIG Hawai'i, however, maintained that it had no duty to defend or indemnify Outrigger and, thus, denied the tender. Fireman's Fund requested AIG Hawai'i to reconsider its denial, but AIG Hawai'i maintained its position that it had no duty to defend or indemnify Outrigger.

On June 18, 2001, Outrigger assigned its rights to any claims under the AIG Hawai'i policy to Fireman's Fund.[3] Thereafter, Fire-

---

1. At the time of the accident, Dannog was apparently pregnant with Brittney Labarbera, who was born on December 30, 1998, the date of the accident.

2. According to AIG Hawai'i, Silva had finished work at Outrigger, met some hotel guests, and had two glasses of white wine at a bar on Outrigger's premises. Thereafter, Silva was involved in the motor vehicle accident.

3. Fireman's Fund and Outrigger executed an assignment, wherein Outrigger assigned to Fireman's Fund, *inter alia*,

> any and all claims [Outrigger] has or may have against AIG [Hawai'i] under the [AIG Hawai'i policy] for payment and/or reimbursement of attorneys' fees and/or costs incurred in defending the Dannog Lawsuit and/or the Labarbera Lawsuit and for payment of attorneys' fees

man's Fund filed a complaint for declaratory judgment against AIG Hawai'i on June 26, 2001. The complaint prayed for a judgment declaring that: (1) AIG Hawai'i is obligated to defend Outrigger in the underlying lawsuits; (2) AIG Hawai'i is obligated to pay for all of Fireman's Fund's attorneys' fees and costs in defending Outrigger in the underlying lawsuits; and (3) AIG Hawai'i is obligated to indemnify Outrigger for any liability Outrigger may incur resulting from the December 30, 1998 motor vehicle accident. On September 24, 2001, AIG Hawai'i answered the complaint but did not assert any counterclaims, cross-claims, or third-party claims.

On October 4, 2001, Fireman's Fund moved for partial summary judgment on two issues: (1) that AIG Hawai'i is obligated to defend Outrigger in the underlying lawsuits; and (2) that AIG Hawai'i is obligated to pay for all of Fireman's Fund's attorneys' fees and costs in defending Outrigger in the underlying lawsuits. In its opening brief, Fireman's Fund summarized the argument it made in its motion for partial summary judgment on the issue of AIG Hawai'i's duty to defend Outrigger. Therein, Fireman's Fund stated:

> [Fireman's Fund] argued that Outrigger qualified as an "insured" under the AIG [Hawai'i] Policy, which provided:
>
> B. **Insured** as used in this Part means:
>
> . . . .
>
> 2. Any person using [Cynthia Sharabi's] auto with [Sharabi's] permission.
>
> 3. For [Sharabi's] auto, <u>any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded</u> under this Part.

[RA 1:169] (underlined emphasis added by Fireman's Fund). The *Dannog* and *Larbarbera* complaints alleged that Outrigger was vicariously liable for Silva's negligence under the doctrine of respondeat superior. [Fireman's Fund] contended that since both complaints alleged that

Outrigger was legally responsible for the negligence of AIG [Hawai'i's] insured driver, AIG [Hawai'i] had a duty to defend Outrigger.

Fireman's Fund's motion for partial summary judgment was heard on October 23, 2001, and the trial court took the motion under advisement.

Sometime after the hearing on Fireman's Fund's motion for partial summary judgment, AIG Hawai'i settled the *Labarbera* lawsuit by agreeing to pay $25,000 to Shawn Labarbera.[4] On November 8, 2001, AIG Hawai'i initiated an arbitration proceeding against Fireman's Fund through Arbitration Forums, Inc. (AF), pursuant to the Arbitration Agreement. The Arbitration Agreement appears to be a nationwide agreement, wherein members, who are generally insurers or self-insurers, agree to arbitrate certain disputes in a forum provided by AF, the administrator of the Arbitration Agreement. The Arbitration Agreement provides that the signatory parties have endorsed the principle of arbitration for the purpose of resolving certain disputes when two or more signatory parties are involved.

On December 4, 2001, while the motion for partial summary judgment was still under advisement, AIG Hawai'i moved to compel arbitration and stay the proceedings pending arbitration pursuant to the Arbitration Agreement (motion to compel arbitration). Fireman's Fund opposed the motion to compel arbitration on two grounds: (1) the dispute between AIG Hawai'i and Fireman's Fund is not subject to the Arbitration Agreement; and (2) if the dispute is subject to the Arbitration Agreement, AIG Hawai'i defaulted on or waived its right to arbitration. A hearing on the motion to compel arbitration was held on February 4, 2002.

On March 15, 2002, the trial court entered two orders: (1) an order granting in part Fireman's Fund's motion for partial summary judgment; and (2) an order granting in part AIG Hawai'i's motion to compel arbitra-

---

and/or costs awarded or awardable under HRS § 431:10–242 or any other statute, rule or law. The rights assigned to Fireman's Fund did not include Outrigger's indemnity rights, if any, under the AIG Hawai'i policy.

4. On April 4, 2003, a stipulation for dismissal with prejudice as to all claims and parties in the *Labarbera* lawsuit was filed.

tion. The order granting in part Fireman's Fund's motion for partial summary judgment provided that:

(1) AIG Hawai'i was, and is, obligated to defend Outrigger in [the underlying lawsuits];

(2) [Fireman's Fund] is similarly obligated; and

(3) [AIG Hawai'i] is to reimburse [Fireman's Fund] for attorneys' fees and costs in an amount to be determined in arbitration.

The order granting in part AIG Hawai'i's motion to compel arbitration provided, in pertinent part:

The Court ... finds that Plaintiff [Fireman's Fund] and Defendant [AIG Hawai'i] are compelled to arbitrate the following issues:

(1) Whether or not one party will be required to front the future cost of litigation;

(2) What percentage of the future costs of litigation each party is to bear;

(3) The amount of [Fireman's Fund]'s costs and fees to date;

(4) The percentage of [Fireman's Fund]'s costs and fees to date for which AIG [Hawai'i] must reimburse [Fireman's Fund].

Fireman's Fund timely appealed from the order granting in part AIG Hawai'i's motion to compel arbitration on April 5, 2002, and AIG Hawai'i cross-appealed on April 17, 2002.

On March 21, 2003, this court received Fireman's Fund's motion to supplement the record on appeal, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(e)

(2003),[5] with evidence that the present appeal had become moot. Specifically, Fireman's Fund requested to supplement the record on appeal with an affidavit and exhibit evincing that the total amount paid to Outrigger's defense counsel in the underlying lawsuits exceeded $250,000 after briefing was completed in the instant appeal. Fireman's Fund stated that this evidence should be included in the record on appeal because it demonstrates that, even if the Arbitration Agreement applies to the coverage dispute at issue, Rule 2–5 of the Special Arbitration Rules (Rule 2–5) prevents Fireman's Fund from being compelled to arbitrate.[6] Rule 2–5 states:

Compulsory arbitration pursuant to the Agreement's Article First does not apply to a situation in which a matter causes one member's exposure to exceed $250,000 per claim. AF considers a claim and companion claim for different lines of coverage as separate claims within the meaning of this Rule. If the amount in controversy exceeds the compulsory limits for any applicable AF forum or program, all parties must provide written consent to arbitration.

(Emphasis in original omitted.) In response, AIG Hawai'i stated, *inter alia*, that supplementing the record on appeal with new evidence not presented to the trial court would be improper under HRAP Rule 10(e).

On April 11, 2003, this court issued an order to temporarily remand this case to the trial court for the purpose of an evidentiary hearing and the entry of an order, including findings of fact (FOFs) and conclusions of law (COLs) as to whether Rule 2–5 precludes arbitration as ordered by the trial court on March 15, 2002. In its order for temporary

---

5. HRAP Rule 10(e), entitled "Correction or modification of the record," states:

(1) If any differences arise as to whether the record truly discloses what occurred in the court or agency appealed from, the differences shall be submitted to and settled by that court or agency and the record made to conform to the truth.

(2) If anything material to any party is omitted from the record by error or accident or is misstated therein, corrections or modifications may be as follows:

(A) by the stipulation of the parties; or

(B) by the court or agency appealed from, either before or after the record is transmitted; or

(C) by direction of the appellate court before which the case is pending, on proper suggestion or its own initiative.

(3) All other questions as to the form and contents of the record shall be presented to the appellate court before which the case is pending.

6. The Special Arbitration Rules were promulgated by AF under the authority of Article Sixth of the Arbitration Agreement.

remand, this court concluded that none of the provisions of HRAP Rule 10(e) allow admission of the evidence Fireman's Fund sought to introduce.

On December 4, 2003, an evidentiary hearing was held before the trial court. On September 10, 2004, the trial court issued its FOFs, COLS, and order requiring Fireman's Fund and AIG Hawai'i to arbitrate their disputes as initially ordered by the trial court on March 15, 2002.

On January 27, 2005, this court granted Fireman's Fund's motion for leave to file a supplemental brief. Consequently, Fireman's Fund and AIG Hawai'i filed supplemental briefings to address the issues raised by the trial court's FOFs, COLs, and order entered on September 10, 2004.

## II. STANDARDS OF REVIEW

### A. Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration

■■■ A trial court's order granting a motion to compel arbitration and to stay proceedings pending arbitration is reviewed *de novo*. *Luke v. Gentry Realty, Ltd.*, 105 Hawai'i 241, 246, 96 P.3d 261, 266 (2004). "The trial court's decision is reviewed using the same standard employed by the trial court and based upon the same evidentiary materials as were before it in determination of the motion." *Id.* (quoting *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 231, 921 P.2d 146, 151 (1996)) (internal citations, quotation marks, and brackets omitted).

### B. Findings of Fact

■■■ This court reviews the trial court's FOFs under the clearly erroneous standard. *Casumpang v. ILWU Local 142*, 108 Hawai'i 411, 419, 121 P.3d 391, 399 (2005); *Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (citations omitted).

A[n] [FOF] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A[n] [FOF] is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined sub-stantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Bremer v. Weeks*, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (citing *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.*, 100 Hawai'i 97, 112, 38 P.3d 608, 623 (2002)) (internal citation omitted).

### C. Conclusions of Law

■■■ This court reviews the trial court's COLs *de novo* under the right/wrong standard. *Chun v. Bd. of Tr. of Employees' Ret. Sys. of State of Hawai'i*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005). "A COL is not binding upon an appellate court and is freely reviewable for its correctness." *Id.* (citations and internal quotation marks omitted). Moreover, "[a] COL that is supported by the trial court's [FOFs] and that reflects an application of the correct rule of law will not be overturned." *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004) (citations and internal quotation marks omitted) (brackets in original).

## III. DISCUSSION

### A. Fireman's Fund's Appeal

#### 1. Fireman's Fund's Claim Regarding the Applicability of the Arbitration Agreement to the Instant Dispute

■■■ Fireman's Fund contends that the Arbitration Agreement does not apply to the instant disputes because: (1) Outrigger is not a party to the Arbitration Agreement; (2) AIG Hawai'i is not seeking reimbursement of, or contribution to, settlement payment of a first—or third-party claim; and (3) AIG Hawai'i has not yet settled with any of the *Dannog* complainants. AIG Hawai'i counters that, under the Arbitration Agreement, Fireman's Fund is required to arbitrate the disputes that are the subject of this action inasmuch as: (1) it is immaterial whether Outrigger is a party to the Arbitration Agreement; (2) it is immaterial whether AIG Hawai'i is seeking to recover settlement payment from Fireman's Fund; and (3) the issues relating to the duties to defend and/or

indemnify Outrigger in the *Dannog* lawsuit are subject to arbitration.

■ "[W]hen presented with a motion to compel arbitration, the court is limited to answering two questions: (1) whether an arbitration agreement exists between the parties; and (2) if so, whether the subject matter of the dispute is arbitrable under such agreement." *Ko'olau Radiology, Inc. v. Queen's Med. Ctr.*, 73 Haw. 433, 445, 834 P.2d 1294, 1300 (1992).

### a. *existence of an arbitration agreement between the parties*

In this case, it is undisputed that an arbitration agreement exists between AIG Hawai'i and Fireman's Fund, inasmuch as both insurers are signatory parties to the Arbitration Agreement. As between AIG Hawai'i and Outrigger, however, an arbitration agreement does not exist inasmuch as Outrigger is not a signatory party to the Arbitration Agreement. Fireman's Fund claims that it brought the instant declaratory action pursuant to its assignment from Outrigger.

■ In general, "[a]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with *the same legal rights as the assignor* had before assignment." *Illinois Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn. 2004) (citation omitted) (emphasis added); *see also Arena Constr. Co., Inc. v. J. Sackaris & Sons, Inc.*, 282 A.D.2d 489, 722 N.Y.S.2d 884, 884 (2001) (noting that an assignee stands in the shoes of the assignor).

In its complaint for declaratory judgment against AIG Hawai'i, Fireman's Fund, as previously indicated, sought a declaration that AIG, with respect to the underlying lawsuits, is obligated: (1) to defend Outrigger; (2) to reimburse Fireman's Fund its attorneys' fees and costs in defending Outrigger; and (3) to indemnify Outrigger. In prosecuting its declaratory action under the assignment, Fireman's Fund maintains that "Outrigger has the right to claim a defense solely from AIG [Hawai'i]." Specifically, Fireman's Fund contends that

this is not a dispute between two insurance companies over "overlapping coverage" (as characterized by AIG [Hawai'i]); rather, it is a dispute over Outrigger's right to a defense solely from AIG [Hawai'i]. If Outrigger had sued AIG [Hawai'i] directly, instead of assigning its rights to Fireman's Fund, AIG [Hawai'i] would not be entitled to an arbitration of the dispute. Since Fireman's Fund is prosecuting Outrigger's claim by assignment of rights, AIG Hawai'i is not entitled to arbitration of this dispute.

We find it curious that Outrigger would contemplate a direct action against AIG Hawai'i to claim a defense that Fireman's Fund was obligated to provide in the first instance, pursuant to its insurance contract with Outrigger, for which Outrigger paid. In fact, Fireman's Fund paid for, and now seeks reimbursement of and contribution for, the attorneys' fees and costs to defend Outrigger. There is nothing in the record to indicate, and Fireman's Fund does not allege, that Outrigger itself has incurred any out-of-pocket expenses in defending against the underlying lawsuits. In our view, Fireman's Fund is asserting its own claim against AIG Hawai'i, that is, for Fireman's Fund's out-of-pocket expenses incurred as a result of defending its insured under its insurance contract with Outrigger. Thus, we fail to see what legal rights Outrigger possessed that required Fireman's Fund to obtain an assignment in order to bring the instant declaratory judgment action. Consequently, we believe the assignment and whatever rights that may have been given by Outrigger to Fireman's Fund are irrelevant for the purposes of this appeal. Had Outrigger paid all or part of the attorneys' fees and costs and/or contributed to the settlement of any of the claims in the underlying lawsuits, an assignment would have been necessary in order for Fireman's Fund to seek recovery for such expenses on behalf of Outrigger. Such was the case in *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 875 P.2d 894 (1994).

In *Sentinel*, Sentinel Insurance Company (Sentinel) and First Insurance Company of Hawai'i (First Insurance) were comprehensive general liability insurers of Honofed–Pacific and Honofed Development Corporation [hereinafter, collectively, the insured].

*Id.* at 284–85, 875 P.2d at 901–02. The underlying lawsuit, brought by the Association of Apartment Owners of the Park at Pearlridge, alleged breach of contract, breach of warranty, and negligence claims against, *inter alia,* Sentinel's insured. *Id.* at 284, 875 P.2d at 901. During the course of the litigation of the underlying action, Sentinel became involved in discussions with First Insurance regarding Sentinel's belief that a significant portion of the claims being litigated fell within First Insurance's coverage period. *Id.* at 285, 875 P.2d at 902. First Insurance, however, declined to participate in the defense of the underlying action. *Id.*

Meanwhile, the underlying action was dismissed as a result of a settlement to which Sentinel and the insured *jointly contributed* $75,000. *Id.* Sentinel additionally incurred over $48,000 in attorneys' fees and costs in defending the insured. *Id.* Thereafter, Sentinel filed a declaratory relief action, seeking contribution for monies paid in defense and settlement of the claims in the underlying action on behalf of itself and the insured. *Id.* At some point, Sentinel became subrogated to and was assigned all of the insured's rights arising out of First Insurance's refusal to defend. *Id.* at 286 n. 5, 875 P.2d at 903 n. 5. Subsequently, Sentinel moved for summary judgment against First Insurance, contending that:

> (1) First Insurance was obligated to defend the [insured] regarding the claims against them in the underlying action; (2) as a result of First Insurance's wrongful refusal to defend, Sentinel (individually and as assignee of the [insured's] claims) was entitled to recover the amounts paid in defending and settling the underlying action; (3) Sentinel was entitled to attorneys' fees and costs in bringing the declaratory relief action; and (4) Sentinel was entitled to prejudgment interest.

*Id.* at 286, 875 P.2d at 903. The trial court granted summary judgment in favor of Sentinel on First Insurance's duty to defend. *Id.* This court affirmed the trial court's order.[7] *Id.* at 290, 875 P.2d at 907.

As previously stated, Sentinel and the insured *jointly contributed* to the settlement of the underlying action. In order to recoup the *insured's* settlement contribution from First Insurance, an assignment was necessary in order for Sentinel to prosecute the insured's rights arising out of First Insurance's refusal to defend. In addition, Sentinel had its own individual claims against First Insurance to recover the amounts it paid in defending and settling the underlying action on behalf of the insured. Clearly, the insured in *Sentinel* had an assignable right that it conveyed to its insurer, Sentinel. In the instant case, however, Outrigger has not contributed to any settlement nor incurred any out-of-pocket defense costs. Thus, where Fireman's Fund is seeking reimbursement of, and contribution for, its out-of-pocket defense costs from AIG Hawai'i based upon AIG Hawai'i's alleged breach of its duty to defend Outrigger, an assignment of rights from Outrigger is clearly unnecessary. The dispute is clearly between the two insurers. Consequently, AIG Hawai'i and Fireman's Fund, as signatory parties to the Arbitration Agreement, are required to arbitrate those issues that are arbitrable under the Arbitration Agreement. We, therefore, next examine whether the issues involved in this case are arbitrable.

### b. *scope of the arbitration agreement*

The Arbitration Agreement provides in pertinent part:

> WHEREAS, signatory companies have endorsed the principle of arbitration for the purpose of resolving certain disputes on claims in which two or more signatory companies are involved, and
>
> WHEREAS, it is the desire of the said companies to encourage:
>
> > (a) the prompt settlement of all meritorious claims and suits;
> >
> > (b) voluntary resolution of policy coverage disputes between several insurers of the same insured.
>
> NOW, therefore, signatories to this Agreement hereby bind themselves as follows:

---

**7.** The trial court also entered other orders and the parties appealed these orders as well to this court. However, these orders and decisions are not material to the discussion at bar.

## ARTICLE FIRST

To forego litigation and arbitrate unresolved disputes between two or more signatories wherein each has issued:

(a) a policy of casualty insurance covering one or more of a number of parties each asserted to be legally liable for an accident or occurrence out of which a claim or suit for bodily injury or property damage, or a first party payment arises, or as a self-insured has been alleged to be legally liable for an accident or occurrence; or

(b) separate policies of casualty insurance to the same party or parties asserted to cover an accident or occurrence out of which a claim or suit for bodily injury or property damage or first party repayment arises.

With respect to the amount, if any, which each such signatory shall ultimately pay toward a consummated settlement of any such claim or suit, provided such signatories have agreed on the overall settlement value of such claim or suit or first party repayment, it is recommended that each signatory pay an equal share of such settlement, but the settlement of a case in any ratio is made without prejudice to any party to the arbitration proceeding.

## ARTICLE SECOND

A signatory company, prior to verdict, may in its discretion and without the consent of the other signatory company, settle such claim or suit or first party repayment within the jurisdiction of the preceding Article. The amount of such settlement shall not be at issue unless specifically pleaded by one of the parties to the arbitration proceeding.

(Emphasis in original omitted.) The Special Arbitration Forum Training Workbook & Reference Guide (the Guide) [8] states that Articles First and Second of the Arbitration Agreement "specify the requirements for *mandatory* participation [in arbitration] by the members." (Emphasis added.) Thus, pursuant to Article First, signatory parties are subject to compulsory arbitration of their "unresolved disputes" if each party has issued a "policy of casualty insurance" covering a party asserted to be "legally liable for an accident or occurrence out of which a claim or suit for bodily injury" arises. The Guide defines "casualty insurance" as "an insurance contract that provides indemnity and/or defense to the insured for legal liability. The liability must arise from an accident, occurrence or offense for which the insurance contract applies." [9] The Guide also provides that Article Third of the Arbitration Agreement "lists the exceptions which exempt a dispute from compulsory arbitration's jurisdiction." [10]

In the present case, both AIG Hawaiʻi and Fireman's Fund have issued a policy of casu-

8. The Guide, published by AF, appears to provide clarification to certain terms and obligations contained in the Arbitration Agreement. AIG Hawaiʻi, however, provided only three pages of the Guide, which appears to be at least thirty-one pages, if not longer.

9. Rule 2–7 of the Special Arbitration Rules (Rule 2–7) also defines casualty insurance as used in Articles First and Second of the Arbitration Agreement as "any insurance contract covering bodily or property damage liability claims." Rule 2–7 provides that casualty insurance includes, but is not limited to, personal injury protection (no-fault coverage), underinsured motorists, uninsured motorists, workers' compensation, personal injury, and advertising injury coverages giving rise to the category of disputes described in Articles First and Second and legal costs incurred in the settlement of the above claims.
(Emphasis in original omitted.)

10. Article Third of the Arbitration Agreement provides:

No signatory company shall be required, without its written consent, to arbitrate any claim or suit if:

(a) its policy is written on a retrospective or experience rated basis;

(b) any payment which such signatory company may be required to make under this Agreement is or may be in excess of its policy limits;

(c) arbitration might substantially prejudice its rights in the defense or prosecution of any claim or suit arising out of the same accident or occurrence;

(d) it has asserted a policy defense to the claim or suit otherwise subject to arbitration. This exception does not apply to controversies arising under Article First(b), above;

(e) under the casualty insurance coverage, by the terms of the policy contract, settlement can be made only with the insured's consent.

Fireman's Fund does not argue that any of the above five exceptions apply to the instant case, and there is nothing in the record to support the applicability of any of the above five exceptions

alty insurance allegedly covering a party asserted to be "legally liable for an accident or occurrence out of which a claim or suit for bodily injury" arises, *i.e.*, Outrigger. Fireman's Fund, however, asserts that, because AIG Hawai'i is not seeking reimbursement of, or contribution to, settlement payment of a first—or third-party claim, the Arbitration Agreement is not applicable to the instant dispute. In support, Fireman's Fund cites to Rule 3–2 of the Special Arbitration Rules, which provides in relevant part:

> A company should file the application [for arbitration] within 180 days of payment to the injured or damaged first or third party. Failure to file within the 180–day period is an affirmative defense only if the nonpaying company can show the delay has caused prejudice.

Fireman's Fund argues that Rule 3–2 "indicates that an insurer's duty to defend is not subject to arbitration under the [ ] Arbitration Agreement." Moreover, Fireman's Fund contends that "the purpose of the [ ] Arbitration Agreement is to allow a liability insurer to promptly cap a claimant's damages by unilaterally settling a claim, and then pursuing another insurer for reimbursement of, or contribution to, the settlement." Thus, because AIG Hawai'i is not seeking to recover from Fireman's Fund any part of the $25,000 settlement payment it made to settle the *Labarbera* lawsuit, Fireman's Fund concludes that the Arbitration Agreement is inapplicable in the instant case.

AIG Hawai'i counters that, "under the [ ] Arbitration Agreement, upon settlement of the *Labarbera* lawsuit, AIG Hawai'i has the right to compel Fireman's Fund to arbitrate (*not* litigate) the coverage issue of whether or not it is obligated to defend and/or indemnify OUTRIGGER in the consolidated lawsuits." (Emphasis in original.) Moreover, AIG Hawai'i contends that the scope of the Arbitration Agreement is not as limited as Fireman's Fund characterizes it.

The Guide provides that "[q]uestions of liability between disputing co[-]defendants, <u>contractual obligations for overlapping insurers</u>, or related controversies concerning the amount of damages fall within the jurisdiction of the [ ] Arbitration Agreement." (Bold emphasis in original omitted) (underscored emphasis added.) Although the Guide states that the primary reason parties to the Arbitration Agreement support arbitration is because "payment to the third-party or first-party claimant caps the exposure for all involved companies," the Guide also mentions two other reasons why parties support arbitration in the forum provided by AF. One purpose of the Arbitration Agreement is to "enable[ ] members to provide better service to their insurance customers by permitting 'prompt settlement of all meritorious claims and suits.' " (Quoting Article First of the Arbitration Agreement (emphasis in original omitted.)) Another purpose of the Arbitration Agreement is to "encourage voluntary resolution of overlapping policy coverage disputes." (Quoting the Guide at 31.) Furthermore, "arbitration is compulsory and the decision is binding for overlapping coverage disputes if an involved insurer settles with the claimant." (Quoting the Guide at 31 (emphasis in original omitted.))

The Arbitration Agreement, the Special Arbitration Rules, and the Guide do not define "overlapping coverage disputes." In ordinary terms, "overlapping" is defined as "to coincide in part with; have in common with." The Random House College Dictionary 948 (1st ed.1979). Black's Law Dictionary defines "coverage" as: "In insurance, amount and extent of risk contractually covered by insurer. The assumption of risk of occurrence of the event insured against before its occurrence." Black's Law Dictionary 365 (6th ed.1990). This court has previously stated that "at times, the term 'coverage' is utilized to refer to both the obligation to pay attorneys' fees and costs in defending a claim as well as the obligation to pay claims." *Sentinel,* 76 Hawai'i at 284 n. 1, 875 P.2d at 901 n. 1. In yet another case, this court defined coverage to "encompass[ ] the duties to defend, pay for defense costs, and provide liability coverage." *Great Am. Ins. Co. v. Aetna Cas. & Sur. Co.,* 76 Hawai'i 346, 350 n. 2, 876 P.2d 1314, 1318 n. 2 (1994).

to compulsory arbitration under Articles First and Second of the Arbitration Agreement.

In this case, AIG Hawai'i and Fireman's Fund are "overlapping insurers" inasmuch as they each issued a policy of casualty insurance allegedly covering Outrigger, which was asserted to be legally liable for Silva's alleged negligence out of which the underlying lawsuits arose. Moreover, we interpret "coverage dispute" under the Arbitration Agreement to encompass the duties to defend, pay for defense costs, and provide liability coverage. Such an interpretation comports with this court's "proclaimed public policy ... to encourage arbitration as a means of settling differences and thereby avoiding litigation." *Lee v. Heftel*, 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996) (noting that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration) (ellipsis in original) (internal quotation marks and citation omitted); *Bateman Constr., Inc. v. Haitsuka Bros., Ltd.*, 77 Hawai'i 481, 484, 889 P.2d 58, 61 (1995) (noting Hawai'i's strong "public policy encouraging arbitration"). Accordingly, the overlapping coverage disputes regarding the duties to defend, pay for defense costs, and provide liability coverage are arbitrable issues under the Arbitration Agreement. Thus, we hold that the trial court erred when it limited the issues to be arbitrated only to the issues relating to the duty to pay for defense costs.

Fireman's Fund, however, contends that the dispute over AIG Hawai'i's duty to defend Outrigger in the *Dannog* lawsuit, as opposed to the *Labarbera* lawsuit, is not subject to arbitration because AIG Hawai'i had not made settlement payments to the *Dannog* claimants.[11] AIG Hawai'i contends that "[t]he Guide provides that 'a party may request a one-year deferment if there are companion claims and/or suits pending,' " and, thus, "the issues relating to the defense of the *Dannog* lawsuit as well as the *Labarbera* lawsuit (both of which were consolidated) are subject to arbitration." Moreover, AIG Hawai'i asserts that it should not be forced to incur additional costs, expenses, and attorneys' fees in proceeding in two different forums, *i.e.*, litigating the issues relating to the coverage disputes of the *Labarbera* lawsuit in court and arbitrating the issues relating to the coverage disputes of the *Dannog* lawsuit in an arbitration forum.

As previously stated, the Guide states that "arbitration is compulsory and the decision is binding for overlapping coverage disputes if an involved insurer settles with the claimant." The Guide also provides that "[a] party may request a one-year deferment if there are companion claims and/or suits pending." Likewise, Rule 3–10 of the Special Arbitration Rules provides in pertinent part:

> A party may request deferment of arbitration until the conclusion of all companion claims or suits not subject to arbitration.... Deferments shall be for one year from the date of filing. AF shall hear a deferred case at the expiration of that time unless it receives a request for further deferment.

In this case, AIG Hawai'i settled the *Labarbera* lawsuit by agreeing to pay $25,000 to Shawn Labarbera, the only claimant in the *Labarbera* lawsuit. On October 31, 2001, counsel for Shawn Labarbera sent a letter to AIG Hawai'i, confirming that a settlement had been reached in the *Labarbera* lawsuit, whereby "Mr. Labarbera's suit against the [sic] Silva, Sharabi, and Outrigger will be dismissed." Following settlement of the *Labarbera* lawsuit, on November 8, 2001, AIG Hawai'i initiated an arbitration proceeding against Fireman's Fund through AF under the Arbitration Agreement. On November 16, 2001, AF informed Fireman's Fund that arbitration was deferred for one year, pursuant to Rule 3–10, due to the pending companion suit, *i.e.*, the *Dannog* lawsuit. Thus, Fireman's Fund's contention that the dispute over AIG Hawai'i's duty to defend Outrigger in the *Dannog* lawsuit is not subject to arbitration because AIG Hawai'i had not made

11. On March 28, 2003, the *Dannog* complainants' counsel filed a stipulation for dismissal with prejudice of all parties and claims, except for the claims of Dannog as next friend of Brittney Labarbera against all parties. The record does not indicate if the dismissed claims were settled.

The parties do not indicate in their supplemental briefings filed in early 2005 if the dismissed claims were settled and whether the claims of Dannog as next friend of Brittney Labarbera were settled.

any settlement payments to any of the *Dannog* claimants is without merit.[12]

## 2. Fireman's Fund's Claim that AIG Hawai'i Defaulted on or Waived Its Rights To Arbitration

■ Fireman's Fund contends that the trial court erred in granting AIG Hawai'i's motion to compel arbitration because AIG Hawai'i defaulted on or waived its rights to arbitration. Specifically, Fireman's Fund asserts that AIG Hawai'i is in default of the Arbitration Agreement because it did not initiate arbitration in January 2001, when it denied a tender of defense made by Fireman's Fund, or at any time prior to the hearing of Fireman's Fund's motion for partial summary judgment on October 23, 2001. Fireman's Fund also maintains that,

> [u]nder these circumstances, where not only was AIG's conduct inconsistent with any reliance on a right to arbitration, but where Fireman's Fund incurred significant attorneys' fees and costs due to AIG's pursuit of discovery relating to the substantive issues presented by the lawsuit in lieu of promptly demanding arbitration, AIG has waived its right to arbitration. *See Shimote v. Vincent*, 80 Hawai'i 96, 905 P.2d 71 (App.1995) (court may declare a waiver if party's conduct can be deemed inconsistent with any reliance on the right to arbitration).

Fireman's Fund's arguments are without merit.

■ Waiver is generally defined as "an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right." *Daiichi Hawai'i Real Estate Corp. v. Lichter*, 103 Hawai'i 325, 346 n. 17, 82 P.3d 411, 432 n. 17 (2003) (citation omitted). Moreover, "[w]aiver of the right to arbitration pursuant to a valid arbitration agreement will not be lightly inferred." *Kama'ole*

*Two Hui v. Aziz Enterprises, Inc.*, 9 Haw. App. 566, 573, 854 P.2d 232, 236 (1993) (citation omitted). However, "[a]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon." *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 110, 705 P.2d 28, 36 (1985) (internal quotation marks and citation omitted). Nevertheless, "the process of obtaining information through discovery, in and of itself, [is] not completely inconsistent with a reliance on the right to arbitration." *Shimote v. Vincent*, 80 Hawai'i 96, 100, 905 P.2d 71, 75 (App.1995) (citing *Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc.*, 78 Hawai'i 107, 114, 890 P.2d 694, 701 (1995), *superseded by statute on other grounds as stated in Ueoka v. Szymanksi*, 107 Hawai'i 386, 114 P.3d 892 (2005)).

In *Shimote*, the defendants did not initially assert their intent to rely on their right to arbitration in their pleadings, they actively engaged in litigation for six years, and they did not file a motion to stay the proceedings in order to pursue arbitration until approximately one month before trial. *Id.* at 100–01, 905 P.2d at 75–76. Under these circumstances, the Intermediate Court of Appeals of Hawai'i (ICA) held that the defendants' actions were "completely inconsistent with a reliance on their right to arbitration." *Id.* at 100, 905 P.2d at 75. The ICA stated:

> If [the defendants] notified [the plaintiff] about their intent to rely on the right to arbitration in their answer, or put [the plaintiff] on notice earlier in the proceedings, rather than notify [the plaintiff] on the eve of trial, [the defendants'] actions would resemble [the defendants'] actions in *Rainbow Chevrolet* [, 78 Hawai'i at 107, 890 P.2d at 701], and would not be completely inconsistent with a reliance on the right to arbitrate. [The defendants in the instant case] actively filed various motions,

---

12. Fireman's Fund also contends that the phrase "suits not subject to arbitration" in Rule 3–10 is to be interpreted to mean that AIG Hawai'i "admit[ted] that its duty to defend Outrigger against the *Dannog* lawsuit is *not yet subject to arbitration.*" (Emphasis in original.) However, Fireman's Fund misinterprets Rule 3–10. Although the coverage disputes between Fireman's Fund

and AIG Hawai'i are arbitrable, the tort claims in the underlying lawsuits in this case, *i.e.*, the *Dannog* and *Labarbera* lawsuits, are not subject to arbitration inasmuch as no arbitration agreement exists between the *Labarbera* and *Dannog* complainants and the defendants in the underlying lawsuits.

opposing memoranda and discovery documents which would easily lead the other parties to believe that [the defendants] would proceed to trial.

*Id.* at 101, 905 P.2d at 76.

In *Rainbow Chevrolet,* the defendants in their answers "alleged that all or a portion of the claims alleged in the complaint are determinable by arbitration." *Id.* at 111, 890 P.2d at 698. After the completion of discovery, the defendants moved to stay the proceedings pending arbitration. *Id.* at 112, 890 P.2d at 699. On appeal, the ICA held that the defendants' actions were not completely inconsistent with its reliance on the right to arbitration. *Id.* at 114, 890 P.2d at 701. The ICA noted that the defendants' "answers cited the arbitration clause and clearly indicated their intent to rely on it and not to waive it." *Id.* Moreover, the ICA stated that, "[s]ince discovery is a process of obtaining information, and such a process is not completely inconsistent with arbitration, we conclude that the [defendants'] participation in discovery in the civil suit was not a waiver of their right to arbitration." *Id.; see also Ass'n of Owners of Kukui Plaza,* 68 Haw. at 110, 705 P.2d at 36 (holding that, although the defendant had filed several motions for summary judgment before demanding arbitration, it could not be deemed to have waived its right to arbitration because the motions opposed the plaintiff's right to bring the suit).

As previously mentioned, AIG Hawai'i settled the *Labarbera* lawsuit sometime between October 23, 2001 and October 31, 2001. On November 8, 2001, AIG Hawai'i submitted the appropriate arbitration forms to AF, and, on December 4, 2001, AIG Hawai'i filed its motion to compel arbitration. The Guide clearly states that "settlement with the claimant is a *prerequisite* to compulsory Special Arbitration." Where settlement with the claimant is a prerequisite to compulsory arbitration under the Arbitration Agreement, Fireman's Fund's argument that AIG Hawai'i should have initiated arbitration in January 2001 or prior to October 23, 2001 is without merit.

Moreover, AIG Hawai'i raised the defense of arbitration in its answer to Fireman's Fund's complaint filed on September 24, 2001, thereby indicating its intent to rely on arbitration and not to waive it. Furthermore, AIG Hawai'i's actions were not completely inconsistent with any reliance on a right to arbitration. AIG Hawai'i's participation in discovery was not a waiver of its right to arbitration, where the facts of the instant case are more analogous to *Rainbow Chevrolet* than *Shimote.* Here, AIG Hawai'i raised its defense of arbitration in its answer, it actively engaged in litigation for only about six months, and it filed its motion to compel arbitration at a time when a trial date had not yet been scheduled. Thus, AIG Hawai'i did not default on or waive its rights to arbitration. Accordingly, we hold that the trial court did not err in granting AIG Hawai'i's motion to compel arbitration.

### 3. Fireman's Fund's Contention that Rule 2–5 Precludes Compulsory Arbitration between Fireman's Fund and AIG Hawai'i

■ Fireman's Fund's final contention centers on the interpretation of Rule 2–5 and whether Rule 2–5 precludes compulsory arbitration between Fireman's Fund and AIG Hawai'i. As previously stated, Rule 2–5 provides:

Compulsory arbitration pursuant to the Agreement's Article First does not apply to a situation in which a matter causes one member's exposure to exceed $250,000 per claim. AF considers a claim and companion claim for different lines of coverage as separate claims within the meaning of this Rule. If the amount in controversy exceeds the compulsory limits for any applicable AF forum or program, all parties must provide written consent to arbitration.

(Underscored emphasis added.) (Bold emphasis in original omitted.) Fireman's Fund challenges the following FOFs and COLS entered by the trial court on remand regarding whether Rule 2–5 precludes compulsory arbitration between Fireman's Fund and AIG Hawai'i:

Findings of Fact:

. . . .

11. The total amount of attorneys' fees and costs paid by FIREMAN'S FUND to the Hisaka/Stone Law Firm[13] for the defense of OUTRIGGER with respect to the claim of SHAWN LABARBERA was *$2,385.64* (which includes amounts incurred both before and after the tender of defense).

12. The exposure of AIG HAWAI'I to FIREMAN'S FUND for the attorneys' fees and costs incurred by FIREMAN'S FUND in defending OUTRIGGER with respect to the claim of SHAWN LABARBERA does *not* exceed the "$250,000 per claim" limit described in Special Arbitration Rule 2–5.

13. As the movant and the party seeking to avoid arbitration under the Special Arbitration Agreement, Fireman's Fund has *not* shown that the exposure of AIG HAWAI'I to it for the attorneys' fees and costs incurred by it in defending OUTRIGGER with respect to the separate claims of EDITHA DANNOG, DUSTIN BRUN, ASHLEY BAPTISTE, CANDACE BAPTISTA, and BRITTNEY LABARBERA exceeds the "$250,000 *per claim*" limit described in Special Arbitration Rule 2–5.

14. As the movant and the party seeking to avoid arbitration under the Special Arbitration Agreement, FIREMAN'S FUND has not identified, separated or calculated the fee and expense items (and the amounts thereof) which were incurred by it with respect to each of the claimants in the Dannog Lawsuit including the attorneys' fees and expenses incurred in defending against the separate claim of BRITTNEY LABARBERA which is still pending and has not been dismissed.

Conclusions of Law:

. . . .

8. The Court concludes that the exposure of AIG HAWAI'I to FIREMAN'S FUND for the attorneys' fees and costs incurred by FIREMAN'S FUND in defending OUTRIGGER with respect to the claim of SHAWN LABARBERA does *not* exceed the "$250,000 per claim" limit described in Special Arbitration Rule 2–5.

9. The Court concludes that, as the movant and the party seeking to avoid arbitration under the Special Arbitration Agreement, FIREMAN'S FUND has *not* shown that the exposure of AIG HAWAI'I to it for the attorneys' fees and costs incurred by it in defending OUTRIGGER with respect to the separate claims of EDITHA DANNOG, DUSTIN BRUN, ASHLEY BAPTISTE, CANDACE BAPTISTE and BRITTNEY LABARBERA exceeds the "$250,000 *per claim*" limit described in Special Arbitration Rule 2–5.

10. The Court concludes that, as the movant and the party seeking to avoid arbitration under the Special Arbitration Agreement, FIREMAN'S FUND has *not* identified, separated, or calculated the fee and expense items (and the amounts thereof) which were incurred by it with respect to each of the claimants in the Dannog Lawsuit including the attorneys' fees and expenses incurred in defending against the separate claim of BRITTNEY LABARBERA which is still pending and has not been dismissed.

11. The Court concludes that Special Arbitration Rule 2–5 does *not* preclude the arbitration ordered by the Court on March 15, 2002.

(Emphases in original.) Fireman's Fund contends that the trial court erroneously focused on the six plaintiffs in the underlying lawsuits, rather than on Outrigger, when determining how many "claims" existed under Rule 2–5. Fireman's Fund asserts that there is only one "claim" at issue in this case—"Fireman's Fund's claim for reimbursement of defense costs,"—and there is no dispute that such "claim" exceeds

---

**13.** Fireman's Fund paid the law firm of Hisaka, Stone, Goto, Yoshida, Cosgrove & Ching (Hisaka/Stone Law Firm) to defend Outrigger in the underlying lawsuits.

$250,000.[14] Fireman's Fund further contends that "[t]he consolidated action in which [Fireman's Fund] is defending Outrigger arose from a single act of negligence— Silva driving an automobile while allegedly intoxicated. There was one motor vehicle accident, in which six persons were injured, giving rise to two lawsuits which were consolidated into a single action." Thus, Fireman's Fund also argues that "Silva's single act of negligence constitutes one 'claim.'"

In response, AIG Hawai'i contends that, "[i]n order to be excluded from compulsory arbitration under the [ ] Arbitration Agreement, a matter must cause a member's exposure to exceed $250,000 *per claim* (*not* simply exceeding $250,000)." (Emphases in original.) AIG Hawai'i further argues that, in the underlying lawsuits, "OUTRIGGER was sued for its liability as employer of Rodney Silva as well as its own independent negligent acts and omissions in serving Silva alcoholic beverages while he was apparently intoxicated," and, thus, there was more than a "single negligent act" involved in the underlying lawsuits.

The trial court entered the following COLs with respect to the meaning of "claim," as utilized in Rule 2–5:

5. In determining whether Special Arbitration Rule 2–5 precludes arbitration as ordered on March 15, 2002, it is necessary to construe the term "$250,-000 per claim" and determine whether that limit has been exceeded.

6. The Hawai'i appellate courts have held that the word "claim" is very broad. In *High v. Hawaiian Government*, 8 Haw. 546, 549 (1892), the Supreme Court stated that the word "claim" is one of a "very broad meaning" and noted that Lord Coke said, "that the word demand is the largest word in law, except claim." *See also St. Paul Fire and Marine Ins. Co. v. Hawaiian Ins. & Guar. Co.*, 2 Haw.App. 595, 596, 637 P.2d 1146, 1147 (1981).

7. The Court concludes that the Dannog and Labarbera lawsuits involved six (6) claims, namely, the claims of SHAWN LABARBERA, EDITHA DANNOG, DUSTIN BRUN, ASHLEY BAPTISTE, CANDACE BAPTISTE and BRITTNEY LABARBERA.

The Arbitration Agreement and the Guide do not provide any guidance on the construction of the term "claim," as utilized in Rule 2–5. According to Black's Law Dictionary, "claim" means

[t]o demand as one's own or as one's right; to assert; to urge; to insist. *A cause of action.* Means by or through which claimant obtains possession or enjoyment of privilege or thing. *Demand for money or property as of right, e.g., insurance claim.*

Black's Law Dictionary 247 (6th ed.1990) (emphases added). In turn, "cause of action" is defined as "[t]he fact or facts which give a person a right to judicial redress or relief against another. The legal effect of an occurrence in terms of redress to a party to the occurrence." Black's Law Dictionary 221 (6th ed.1990). Other jurisdictions have defined claim in rather broad terms as well. *See Dorney v. Dairymen's League Co-op. Ass'n*, 149 F.Supp. 615, 618 (D.C.N.J.1957) (noting that claim means "a legal right, the invasion of which by defendant has caused damage to the plaintiff"); *Steele v. State*, 159 Ala. 9, 48 So. 673, 674 (1909) (equating claim with "a right to claim; a just title to something in the possession or at the disposal of another").

In *St. Paul Fire and Marine Ins. Co. v. Hawaiian Ins. & Guaranty Co.*, 2 Haw.App. 595, 637 P.2d 1146 (1981), the plaintiff in the underlying case brought two wrongful death actions against three physicians, alleging that the physicians negligently administered anesthesia to the decedent on three separate occasions. *Id.* at 595, 637 P.2d at 1146–47. Two of the administrations were performed by one doctor, and the third administration

**14.** Fireman's Fund and AIG Hawai'i stipulated that, *inter alia,* for purposes of the evidentiary hearing held before the trial court, Exhibit P–28 summarized the Hisaka/Stone Law Firm's invoices and the payments made by Fireman's Fund to the Hisaka/Stone Law Firm for attorneys' fees and costs incurred in defending Outrigger in the underlying lawsuits. Exhibit P–28 indicates that, as of February 28, 2003, Fireman's Fund has paid $287,334.24 to the Hisaka/Stone Law Firm.

was performed by a second doctor. *Id.* at 596, 637 P.2d at 1147. The two doctors practiced with a third doctor, and the three were insured together by the same insurance company. *Id.* at 595, 637 P.2d at 1146–47. The two actions were consolidated and settled for a lump sum. *Id.* at 595, 637 P.2d at 1147. In a subsequent lawsuit, the primary and excess insurers of the physicians disputed who was responsible for a portion of the damages. *Id.* The dispositive issue on appeal was the meaning of "claim," as used in the insurance policy issued by the primary insurer. *Id.* at 596, 637 P.2d at 1147. The ICA held that "the three separate acts of negligence alleged as causes of the death of the claimant are each claims, according to the commonly accepted meaning of that word in the law." *Id.* The ICA thus concluded that there were three claims, notwithstanding the fact that the two wrongful death actions were consolidated and settled together. *Id.* at 597, 637 P.2d at 1147. *See The Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Tech., Inc.,* 930 F.Supp. 825 (E.D.N.Y.1996) (noting that "the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed") (collecting cases).

Here, although we are not construing a liability insurance policy, but rather an arbitration agreement wherein two insurers are signatory parties, we determine that the foregoing definitions of claim are instructive. In the underlying lawsuits, the six complainants demanded money damages and other relief against Outrigger and other defendants. As previously mentioned, both underlying lawsuits alleged that (1) Silva was an Outrigger employee who was operating Sharabi's automobile within the course and scope of his employment with Outrigger and (2) Outrigger was liable for its own negligent acts and omissions in serving Silva alcoholic beverages while he was apparently intoxicated. Based on the complaints of underlying lawsuits, it appears that Outrigger was sued under the doctrines of *respondeat superior*

and dram shop liability. Thus, contrary to Fireman's Fund's contentions, there is more than a "single negligent act" involved in the underlying lawsuits. We, therefore, conclude that each basis for liability advanced by each of the six complainants in the underlying lawsuits against Outrigger, the insured, for money damages or other relief owed, constitutes a separate or individual "claim" in the specific context of Rule 2–5, *i.e.,* twelve claims total. Consequently, COL No. 7 is wrong, to the extent that the trial court determined that only six claims were involved in the underlying lawsuit.[15] However, the wrong COL does not affect the outcome of the trial court's decision, *i.e.,* that Rule 2–5 does not preclude arbitration, inasmuch as *each* claim must still exceed $250,000 in order to avoid compulsory arbitration. In other words, regardless of whether there were six or twelve claims involved in the underlying lawsuit, the trial court's findings and conclusions that the exposure of AIG Hawai'i to Fireman's Fund for the attorneys' fees and costs incurred by Fireman's Fund in defending Outrigger against the six plaintiffs in the underlying suit did not exceed "$250,000 *per claim* " are not clearly erroneous or wrong. Accordingly, we hold that the trial court did not err in its ultimate conclusion that Rule 2–5 does not preclude the arbitration previously ordered by the trial court.

### B. *AIG Hawai'i's Cross–Appeal*

On cross-appeal, AIG Hawai'i contends that, although the trial court did not err in compelling arbitration, the trial court erred in limiting the issues to be arbitrated. AIG Hawai'i specifically argues that whether it has a duty to defend or a duty to indemnify are arbitrable issues. We need not address the issues raised in AIG Hawai'i's cross-appeal in light of our holding that the overlapping coverage disputes regarding the duties to defend, pay for defense costs, and provide liability coverage are arbitrable issues under the Arbitration Agreement.

---

**15.** As previously stated, COL No. 7 provides:

The Court concludes that the Dannog and Labarbera lawsuits involved *six (6) claims,* namely, the claims of SHAWN LABARBERA, EDI-
THA DANNOG, DUSTIN BRUN, ASHLEY BAPTISTE, CANDACE BAPTISTE AND BRITTNEY LABARBERA.
(Emphasis added.)

## IV. CONCLUSION

Based on the foregoing, we reverse, in part the March 15, 2002 order granting in part AIG Hawai'i's motion to compel arbitration and remand this case to the trial court for further proceedings consistent with this opinion.

